# JOHNSTON HARVESTER COMPANY v. JOSEPH MILLER.

*Bills and notes—Execution by maker—Evidence—Cross-examination—Expert testimony—Genuineness of signature—Bona fide holders—Principal and agent—Fraud—Ratification.*

1. Where the execution of a note is denied by the defendant, and the agent who claims to have taken it for the plaintiff swears that he was present and saw the defendant sign it, he may be cross-examined fully as to all that took place at the time of such alleged signing.

2. Where an agent for a harvester company went with a debtor of ·his to the house of a party who had given said debtor a note for "Bohemian oats," and by agreement between the three the Bohemian-oat note was surrendered, and a note for the same amount given by the payor to the harvester company upon one of its printed blanks, purporting to be for a machine sold to the payor, and in a suit by the company upon the note the agent testifies to its execution, and on his cross-examination denies having any knowledge of the consideration for the note in place of which it was taken until after such exchange, he may be asked if he has not stated out of court that he had such knowledge, and if he denies making such statements the defendant may prove. them as a part of his defense.

3. In a suit upon a note, the execution of which is denied by the defendant, he may show by the cross-examination of an agent who claims to have taken it for the plaintiff, and who swears to its execution by defendant, as affecting the credibility of the witness, the negotiation by him prior to the date of the note in suit of another forged note purporting to be signed by the defendant, which testimony is also admissible as tending to shcw that the witness obtained the note in suit fraudulently. *Stubly v. Beachboard*, 68 Mich. 402 (head-note 5).

4. Where expert witnesses testify, entirely from comparison, to the genuineness of a disputed signature, it is competent on cross-examination, for the purpose of testing the value of their testimony, to show them other signatures properly in evidence, purporting to be made by the same person, and by their comparison of the same to show that they differ radically in their views of the similarity of letters, and that they might be easily mistaken in their assumptions from such a comparison; and the fact that the witnesses do not know whether the latter signatures were made by one man or two but adds to the value of the test.

5. A principal cannot ratify the fraud of an agent by accepting a note which is the fruit of such fraud, and suing upon it, and at the same time claim to be a good-faith holder of the note because the agent failed to acquaint him with the circumstances under which he procured it when he sent it to the plaintiff, who was led to suppose that he had taken it in the ordinary course of his agency.

Error to Wayne. (Brevoort, J.) Argued June 13, 1888. Decided November 1, 1888.

*Assumpsit.* Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Sprague & Carey,* for appellant, contended:

1. The plaintiff made a *prima facie* case by proving the execution of the note by the witness Reynolds, who became defendant's witness as to matters of defense drawn out on cross-examination, and the defendant could not impeach him generally, nor in respect to those matters; citing *Jackson v. Son,* 2 Cal. 178; *People v. Moore,* 15 Wend. 419; *Fairchild v. Bascomb,* 35 Vt. 398; *Trustees v. Ins. Co.,* 23 How. Pr. 448; *Craig v. Grant,* 6 Mich. 447.

2. Questions lacking certainty of time, place, and persons present are not properly framed for impeaching questions; citing *Smith v. People,* 2 Mich. 416; *Howard v. Patrick,* 43 Id. 121; *Johnson v. Disbrow,* 47 Id. 59.

3. The evidence regarding the sale by Reynolds to Miller of a feed-grinder was immaterial and irrelevant; citing *Vinton v. Peck,* 14 Mich. 286.

4. A witness cannot be impeached by contradiction upon matters not pertinent to the issue; citing *Dunn v. Dunn,* 11 Mich. 284; *Fisher v. Hood,* 14 Id. 189; *Hitchcock v. Burgett,* 38 Id. 501;

*Leavitt v. Stansell*, 44 Id. 424; *Dalman v. Koning*, 54 Id. 320.

5. A writing, the genuineness of which is disputed, cannot be used on the cross-examination of a witness called as an expert on a question of handwriting, to test his accuracy; citing Rogers, Exp. Test. § 148; Lawson, Exp. Test. 413; *Howard v. Patrick*, 43 Mich. 122; *Tyler v. Todd*, 36 Conn. 222; *Bacon v. Williams*, 13 Gray, 525; *Van Wyck v. McIntosh*, 14 N. Y. 439; *Bank v. Mudgett*, 44 Id. 514.

6. The Court has uniformly held that the examination of experts on questions of handwriting should be confined to papers in issue, and not extend to other and unproved writings; citing *Vinton v. Peck*, 14 Mich. 286; *Van Sickle v. People*, 29 Id. 61; *In re Foster*, 34 Id. 20; *Bank v. Robert*, 41 Id. 709; *Howard v. Patrick*, 43 Id. 122; *People v. Gale*, 50 Id. 237.

7. The payee of a note may be a *bona fide* holder within the meaning of that term; citing *Outhwite v. Porter*, 13 Mich. 533.

8. Where novation occurs, and a note is given direct to the payee by the maker at the request of the intervening party, a failure of consideration between that party and the maker does not affect the payee, and he can recover; citing *Outhwite v. Porter*, 13 Mich. 533; *Iron Co. v. Brown*, 63 Me. 139; *Horn v. Fuller*, 6 N. H. 511; *Railroad Co. v. Chamberlin*, 44 Id. 494; *Adams v. Power*, 48 Miss. 450; *Harrod v. Black*, 1 Duv. (Ky.) 180; *Glascock v. Rand*, 14 Mo. 550; *Henry v. Ritenour*, 31 Ind. 136.

9. The holder of a note transferred to him before maturity in payment of an antecedent debt is deemed to have received it for value, in the usual course of trade; citing *Bostwick v. Dodge*, 1 Doug. 413; *Outhwite v. Porter*, 13 Mich. 533.

10. The circumstances of the inception of this note are not such as will prevent recovery by a *bona fide* holder, but the maxim that, when one of two innocent persons must suffer by the acts of a third, the loss must be borne by the person who enables such third person to occasion it, applies; citing *Burson v. Huntingdon*, 21 Mich. 415; *Gibbs v. Linabury*, 22 Id. 479; *Mc-Namara v. Gargett*, 68 Id, 454; *Mace v. Kennedy*, Id. 389.

11. Evidence of notice to Reynolds should have been excluded from the consideration of the jury on proof that plaintiff was a *bona fide* holder; citing *Hunter v. Parsons*, 22 Mich. 96; *Miller v. Finley*, 26 Id. 249; *Polhemus v. Bank*, 27 Id. 44.

12. As to the weight to be given by the jury to the opinion of expert witnesses as to the genuineness of Miller's signature to the note, counsel cited *Vinton v. Peck*, 14 Mich. 286; *People v. Gale*, 50 Id. 237; *Van Sickle v. People*, 29 Id. 61; *In re Foster*,

34 Id. 20; *Bank v. Robert*, 41 Id. 709; *Howard v. Patrick*, 43 Id. 122.

*Samuel W. Burroughs,* for defendant, contended:

1. A note void for illegality of consideration is not a sufficient consideration for a new note given instead thereof; citing *Comstock v. Draper*, 1 Mich. 481.

2. Under the facts, as disclosed in the record, plaintiff is not entitled to recover; citing *McNamara v. Gargett*, 68 Mich. 454.

3. Failure of consideration may always be shown in a suit on a contract, and in an action on negotiable paper proof may be made of the purpose for which it was given, or that the purpose does not require the enforcement of payment; citing *Maltz v. Fletcher*, 52 Mich. 484.

4. A *bona fide* purchaser, even, cannot recover on a note the signature to which was obtained by fraud and deceit without the fault of the person purporting to be the maker; citing *Bank v. Deal*, 55 Mich. 502; and where a bond is given with a note, parol evidence is admissible to show non-compliance with its conditions; citing *Bowker v. Johnson*, 17 Mich. 42.

MORSE, J. The plaintiff sued the defendant in *assumpsit* upon the following promissory note:

"$100.                    INKSTER, MICH., Nov. 28, 1885.

"On or before the first day of January, 1887, for value received, I, the undersigned, of the township of Taylor, county of Wayne, State of Michigan, promise to pay to the order of the Johnston Harvester Company, one hundred dollars ($100), payable at express office, Dearborn, Mich., with interest at seven per cent. per annum from Nov. 1, 1885, until due, and ten per cent. after due.

"JOSEPH MILLER.

"P. O. Address: Taylor, County, Wayne, State, Mich."

This note was indorsed as follows:

"For value received I hereby guarantee the prompt payment of the within note, and waive protest, demand, and notice of non-payment thereof.

"GEORGE REYNOLDS.

"Post-office:    Inkster, Mich.    Date, Dec. 17, 1885."

The defendant pleaded the general issue, and gave notice that the alleged note was without value and con-

sideration, and that it was a forgery, and never executed by him.    He also filed an affidavit, denying under oath its execution.    Verdict and judgment in the court below for defendant.

Reynolds was the agent of plaintiff in selling machines, and acted as such agent under a written contract.    One Samuel Clay, a farmer, was owing him $100.    Clay had delivered oats under the usual Bohemian scheme to defendant, and held his note for $100.    Clay said to Reynolds that if they could get defendant to take up his note, and give a new one to Reynolds, "it would clear them both."

Reynolds and Clay were the only witnesses for plaintiff. They testify that the note from defendant to Clay was written on an ordinary half sheet of white note paper, and Reynolds did not wish to take it, because his company (the plaintiff) would not receive a note in payment of Reynolds' indebtedness to them, unless it was written upon one of its blanks.    They went together to Miller's house, and proposed the arrangement to him.    He at once accepted the proposition, and executed and delivered, the note in suit to Reynolds.    The Clay note was then delivered to defendant, and burned.    Reynolds knew nothing of the consideration for the old note until after the new note was made and delivered to Reynolds.    Then the defendant said that if the Bohemian Oats Company did what was right with him, he holding the usual bond, he would pay the new note, but if they did not he would not pay it.

Reynolds also testified that he never acquainted the plaintiff with this transaction, or the consideration of the note, but indorsed it a few days after its execution, and forwarded it to plaintiff in payment of a balance due from him to the company.

Miller testified in his own behalf that, in the fall of

1885, one Riggs, an agent for a Bohemian Oats Company, contracted with him for the sale of 10 bushels of Bohemian oats, and gave him a bond, or contract, by which the said company agreed to purchase 20 bushels of the same kind of oats, to be raised from the seed so purchased by him; that, in pursuance of this contract, he gave the promissory note to Clay, who delivered the oats contracted for; that the company failed to fulfill the bond or contract on their part.

He further testified that Reynolds and Clay came to his house on the 28th day of November, 1885, and requested him to make a new note for the $100, payable to the order of Reynolds; that he did so, conditioned, however, with an oral understanding that unless the Bohemian Oats Company purchased the 20 bushels from him, as agreed in the bond, he would not pay the new note. But he testified further that the note in suit was not the note he then executed, and that he never made or signed any such note at that or any other time; that the note he made and delivered to Reynolds was not written upon a printed blank, but was upon an ordinary sheet of white letter-paper, and did not provide for the payment of any more than 7 per cent. interest before or after due.

The plaintiff, in opening his case, proved the execution of the note by the testimony of Reynolds. The court, against the objection of plaintiff's counsel, permitted a cross-examination of the witness, not only with reference to the execution of the note, but upon other matters pertinent to the claim of the defense. He was asked if he had not made certain statements to different persons to the effect that he knew the Clay note had been given for Bohemian oats when he received it, and before the exchange of notes was made. Then witnesses were permitted to testify in impeachment of his answers to such questions. It is claimed that by asking these questions

the defendant made Reynolds his own witness; and was bound by his answers.

We think there was no error committed in this respect. Reynolds testified in chief that he was present with Clay at the house of Mr. Miller, and saw defendant sign the note, and that he was the agent of the plaintiff. The defendant was entitled, upon cross-examination, to everything that took place at the house on that occasion; and when, upon such cross-examination, the witness stated that he knew nothing about the consideration of the Clay note, or what it was given for, as he did testify, then the defendant was entitled to ask him if he had not made different statements out of court of what occurred there, and, if he denied making any such statements, to prove it when he was making his defense.

It is also assigned as error that the counsel for defendant was permitted to interrogate the witness Reynolds, and show by his own testimony that he had before this sold a grinder, or pulverizer, to the defendant, who paid him the price in cash,—$35; and that afterwards he turned in to a company at Ann Arbor a $35 note, purporting to be signed by the defendant, which was not given for the grinder; and that the grinder was the only implement he ever sold defendant, the price of which was $35. We think this evidence was admissible as affecting the credibility of the witness, who did not claim his privilege of not answering it, because it might tend to criminate him. It was also competent for another reason. It had some tendency to show that the witness obtained the note in this case fraudulently. See *Stubly v. Beachboard*, 68 Mich. 422 (36 N. W. Rep. 202, 203).

Two experts in handwriting, both of whom had never seen defendant write, were examined, and, from a comparison between the signature to the note in suit and signatures of Miller in the case admitted to be genuine,

gave their opinion that the defendant signed the note. To test the value of their evidence, the counsel for the defense asked them to make comparisons between two signatures of the witness Reynolds in the case,—one admitted by him to be genuine, and the other claimed by him to have been written by another than himself, but by his authority and direction. One saw a very close similarity between the letters "yn" in the two signatures, while the other, not seeing this, insisted that the "lds" were very much alike. The object evidently was to show the fallibility and unreliable character of the testimony. The plaintiff's counsel insist that this was error, and invoke the rule that a writing, the genuineness of which is disputed, cannot be used to test his accuracy.

We do not think the rule applies in this instance. It was not claimed that one of these signatures was the genuine signature of Reynolds; but it was used, as not being his signature, in comparison with his admitted signature, for the express purpose of ascertaining what was the value of the opinions of these experts. We know of no rule prohibiting such a test, when the writings are properly in the case, as they were here. The sequel showed that the opinions of the experts were of but little worth, and we are not disposed to limit or confine the opportunities for testing and determining the accuracy and value of expert evidence. These men were testifying entirely from comparison, and it was competent by the comparison thus made upon cross-examination to show that they differed radically in their views of the similarity of letters, and that one as well as both might be easily mistaken in their assumptions from a comparison of signatures. The fact that the witnesses did not know whether the signatures were made by one man or two but added to the value of the test.

It was claimed upon the trial that the plaintiff was a

good-faith holder of the note, and that it received the same in the usual course of business, in payment of an antecedent debt, from Reynolds. The agreement between the plaintiff and Reynolds, under which the latter acted as agent of the former, confined such agency to the sale of the plaintiff's machines, and the taking of orders for the same, and notes for the payment of those sold and delivered, which notes Reynolds was to guarantee. If the jury found that the note in suit was a forgery, as claimed by the defendant, of course the fact of the plaintiff's being a *bona fide* holder would make no difference.

But it was further contended by the defendant that in taking the note Reynolds was the agent of the company, and that the plaintiff was bound by his knowledge that it was given in payment of a Bohemian oat transaction.

The counsel for the plaintiff requested the court to instruct the jury that "the plaintiff's evidence being uncontradicted that the plaintiff is an innocent purchaser for a valuable consideration, and is the present owner of the note sued upon, and the note being unpaid, the only question left for" their consideration was whether or not the note was signed by the defendant,—whether it was his genuine note or not; and that they could not consider any evidence relative to the consideration of this note between Miller and Clay and Miller and Reynolds.

The court refused to so charge the jury, and instructed them in substance that if they believed the testimony on behalf of the defendant as to the circumstances attending the execution of the note, and that there was notice to Reynolds that the new note which he received (the note sued upon in this case) was given to take the place of an old note, which was given for Bohemian oats, then the defendant must prevail. In another part of the charge

72 Mich. 18.

he left it to the jury to say whether or not, under the contract between the plaintiff and Reynolds, and the circumstances attending the procurement of the note he was the agent of the plaintiff in the taking of it. This is the main controversy in the case.

It seems to us that Reynolds, upon his own testimony, must be considered to have been acting as the agent of the company when he procured this note. It was made payable to the order of the plaintiff, and upon the company blanks. It is evident that they received it as a note taken by their agent, and sent it back to him to collect under their contract with him. He guaranteed it in compliance with the contract. He swears that he sent it to them in payment of his indebtedness to them, but it is plain they did not receive it in settlement with him. The contract under which he was employed stipulated:

"10. The second party further agrees to keep a correct account of all machines sold, separate and apart from his other accounts; to make all notes or drafts given for machines payable to the first party or its order; to keep said account-books, notes, or drafts subject to use and inspection of said first party, or its agent, attorney, or assigns; and to comply with the terms of sale above mentioned, unless otherwise authorized or instructed in writing to the contrary by said party of the first part.

"11. The second party further agrees to forward to the first party, at Chicago, Ill., so often as requested during the time of selling said machines, a report of sales showing the number of machines sold, the terms of sale, and, the number of machines unsold, and to remit with each report the money and notes received for machines sold up to that time; also to collect said notes free of charge, when returned to him for that purpose, and forward the money by express or by draft as directed by said first party."

No one appears on behalf of the plaintiff in this suit, except Reynolds, to testify how this note was received, or what the knowledge of the company was as to the

circumstances of its inception. He was authorized to remit either in notes payable to the order of the company and guaranteed by him, or in money, for his sales. He claims he sent this note in lieu of money. He said nothing to plaintiff about it, however, but remitted it as he would a note taken on sale of a machine, and upon the same blanks. The company, under the contract, received it, then, as their note taken by their agent, and must take it with the same knowledge that the agent had. It is not necessary, therefore, to examine the question argued before us whether under any circumstances the payee of a note can be considered a good-faith holder for value as against the maker.

It is plain that Reynolds, in taking the note in suit upon the blanks of the plaintiff, and guaranteeing its payment, as he did notes received upon the sales of machines, acted as the agent of the company. The fact that he sold no machine to defendant does not alter the case. The note, by his act, was made the property of the company at its inception, so that when it was delivered to Reynolds it was delivered to him as the agent of the company. If he was not the agent when he procured it, he received it for the company as their agent. No other officer of the corporation had anything to do with the transaction by which this note became the property of the plaintiff. The company, therefore, must be bound by his acts and his knowledge, if they undertake to recover upon this note. If the taking of this note was not within the scope of Reynolds' agency under the contract, and the making of it upon the blanks of the company and to the order of plaintiff was a fraud upon them, they should, when this fact was ascertained, have repudiated it, and looked to Reynolds for the amount of it.

The plaintiff cannot ratify the fraud of Reynolds upon

the defendant by accepting this note and suing upon it, and claim at the same time to be a good-faith holder of the note, because Reynolds did not acquaint the company of the circumstances under which he procured it when he sent it to them, but led them to suppose that it had been taken in the ordinary course of his agency under the contract.

The judgment is affirmed, with costs.

SHERWOOD, C. J., CHAMPLIN and CAMPBELL, JJ., concurred. LONG, J., did not sit.