LEAHY *et al. v.* CITY OF KNOXVILLE.

(*Knoxville,* September Term, 1951.)

Opinion filed December 14, 1951.

Petition to Rehear January 4, 1952.

Petition denied February 9, 1952.

H. F. ATKINS, CLARENCE BLACKBURN, J. C. THOMASON, and TAYLOR & BADGETT, all of Knoxville, for complainants.

FOWLER, LONG & FOWLER, JOHN A. ROWNTREE, FOSTER D. ARNETT and R. C. SMITH, JR., all of Knoxville, for defendants.

244

 

Mr. Justice Prewitt delivered the opinion of the Court.

The complainants filed their bill charging that the City of Knoxville on April 24, 1951 passed a resolution authorizing an investigation of the various departments of the city government in legislative matters; that on June 5, 1951 the council passed a resolution authorizing an investigation of the activities of city officials and other employees during the recent session of the Tennessee Legislature, for the purpose of disclosing whether undue or improper influence or pressure was exerted in behalf of the legislation affecting the city of Knoxville. It seems that this legislation provided for substantial increases in the pay and salaries of the various city employees. It appears that the resolution also provided for expenses and gave the chairman of the committee authority to subpoena witnesses and for the production of books, papers, records and other evidence, and provided for punishment for witnesses who disobeyed the subpoena. It is charged that said effort on the part of the city was to humiliate and damage the complainants. An injunction was issued as prayed for in the bill but it was later modified so as to allow the investigation to continue but denying the right of the defendants to have the complainants produce the records of their respective organizations. The defendants filed a demurrer, the purport of which challenges the right of the court to in any manner limit the investigation and contended that the city council as a legislative body had the right, power and authority to make this investigation and to require the

production of books, records and private papers of the complainants. The Chancellor held that under the charter provisions, the city had the right to pass the resolution and that it was valid and constitutional; that the city, through its council and sitting as a committee as a whole, is entitled to proceed in the investigation contemplated. The Chancellor further held that the committee may subpoena witnesses to appear and testify as to what they have seen and know and anyone or any organization who may voluntarily appear may give any evidence; that they might even call the complainants to testify but all such witnesses may claim such immunity as they may have under the law; that as to the production by the complainants of their books, valuable records and private papers, the Chancellor held that the resolution and subpoena duces tecum call for unreasonable search and seizure and seek to compel the complainants to testify against themselves and are therefore unconstitutional and void.

The complainants appealed from so much of the decree as held that the city had the right to investigate, and the city appealed from the decree which held that subpoenas duces tecum call for unreasonable search and seizure in violation of the Constitution.

▪ The first question presented is whether or not the defendants have authority to make the investigation. We think that a municipality has the inherent authority to investigate the activities of its several departments and employees. However, in looking to the charter provisions of the city of Knoxville, we find ample authority for such investigations.

The sections of the city charter upon which the motion was based are as follows:

"Section 5.

"(44). Investigations of City Departments. To make such investigations as the legislative body may deem necessary or proper as to any department or as to any of the city's institutions or activities; and to enable the legislative body to make such investigation said body is hereby authorized and empowered to appoint such committee or committees as it deems necessary to make such investigations, and said committee or committees when so appointed are hereby clothed with the power to administer oaths to witnesses, to issue subpoenas for witnesses and to compel their attendance and to punish as for contempt of court by appropriate fine not to exceed $50.00 for failure of a witness when duly summoned to attend and testify, and if necessary to commit such delinquent witness to the workhouse for failure to testify until such witness shall have purged himself of the contempt by agreeing to give evidence and by testifying.''

Sec. 8, Ch. 2, City Code:

"The council, the city manager or any committee authorized by either or both shall have power to inquire into the conduct of any department or office of the city, and to make investigations as to city affairs, and for that purpose may subpoena witnesses, administer oaths and compel the production of books, papers and other evidence.

"Any person who fails or refuses to obey any subpoena issued by the council, city manager or committee, or who refuses to testify, or refuses to produce any evidence requested, shall be deemed to be in contempt and shall be punished by a fine of not less than three dollars nor more than fifty dollars and may be imprisoned in the city jail for a period not exceeding sixty days, or until such time as such witness shall have purged himself of contempt by agreeing to give evidence or by testifying.''

It seems that the real purpose of the resolution authorizing the investigation was to determine whether or not the complainants or any other person or persons, have exercised undue influence in the passage of legislation.

It is insisted by the complainants that an investigation to determine whether the city employees have exercised improper influence on legislation is not authorized by the city charter but is a matter of statewide interest, and therefore for the General Assembly or a grand jury to consider; that this action of the council is ultra vires and that money cannot be appropriated for such an investigation.

It has been recognized by the courts that the collective action of city employees in the field of politics is a proper subject for regulation by the city council. *Duffy* v. *Cooke*, 239 Pa. 427, 86 A. 1076; *McAuliffe* v. *City of New Bedford*, 155 Mass. 216, 29 N. E. 517; *People ex rel. Clifford* v. *Scannell*, 74 App. Div. 406, 77 N. Y. S. 704.

The right to investigate therefore is not ultra vires and the expenditure of the fund appropriated was not illegal.

In *McAuliffe* v. *New Bedford*, 155 Mass. 216, 29 N. E. 517, the court said: "there is nothing in the constitution or the statute to prevent the city from attaching obedience to this rule as a condition to the office of policeman, and making it part of the good conduct required. The petitioner may have a constitutional right to talk politics, but he has no constitutional right to be a policeman. There are few employments for hire in which the servant does not agree to suspend his constitutional rights of free speech as well as of idleness by the implied terms of his contract. The servant cannot complain, as he takes the employment on the terms which are offered him. On the same principle the city may impose any reasonable

condition upon holding offices within its control. This condition seems to us reasonable". See also *Tenney* v. *Brandhove*, 341 U. S. 367, 71 S. Ct. 783, 95 L. Ed., 1019.

This brings us to the second question as to whether the defendants have the right to compel the attendance of the complainants as witnesses to testify for or against themselves or their organizations and compel them to produce their private papers, records, etc., for public inspection and disclosure, or to prove the same by secondary evidence.

In *U. S.* v. *White*, 322 U. S. 694, 64 S. Ct. 1248, 1251, 88 L. Ed. 1542, the following language is used: "Since the privilege against self-incrimination is a purely personal one, it cannot be utilized by or on behalf of any organization, such as a corporation. *Hale* v. *Henkel*, 201 U. S. 43, 26 S. Ct. 370, 50 L. Ed. 652; *Wilson* v. *United States,* 221 U. S. 361, 31 S. Ct. 538, 55 L. Ed. 771, Ann. Cas. 1912D, 558; *Essgee Co.* v. *United States,* 262 U. S. 151, 43 S. Ct. 514, 67 L. Ed. 917. See also *United States* v. *Invader Oil Corp.,* D. C., 5 F. (2d) 715. Moreover, the papers and effects which the privilege protects must be the private property of the person claiming the privilege, or at least in his possession in a purely personal capacity. *Boyd* v. *United States,* 116 U. S. 616, 6 S. Ct. 524, 29 L. Ed. 746. But individuals, when acting as representatives of a collective group, cannot be said to be exercising their personal rights and duties nor to be entitled to their purely personal privileges. Rather they assume the rights, duties and privileges of the artificial entity or association of which they are agents or officers and they are bound by its obligations. In their official capacity, therefore, they have no privilege against self-incrimination. And the official records and documents of the organization that are held by them in a representative rather than in a

personal capacity cannot be the subject of the personal privilege against self-incrimination, even though production of the papers might tend to incriminate them personally.''

 The complainants have not shown any violation of rights in respect to self-incrimination. When complainants filed their bill they had not claimed any immunity and no right had been violated. They have not charged that the defendants would ignore any constitutional immunity if it were properly claimed. Complainants have not disclosed the nature of their incriminatory information in the records, nor have they offered to produce those records so that the examining tribunal may make a proper determination for any claim for immunity.

The cases in 120 A. L. R. pages 1108 and 1116 show that there is a duty on the part of the witnesses subpoenaed at least to produce the records and bring them in so that a proper determination may be made of the claim of immunity. It is not for the witnesses alone to make the decision but the examining tribunal is the one to decide the matter respecting immunity against self-incrimination.

It results that we are of the opinion that the Chancellor was in error in not sustaining the demurrer in its entirety.

The decree of the Chancellor is reversed and the bill dismissed.

TOMLINSON, Justice, dissented.