438 P.2d 424

**PHELPS DODGE CORPORATION, a corporation, Petitioner,**

**v.**

**The SUPERIOR COURT IN AND FOR the COUNTY OF COCHISE, Respondent, and**

**Sol Lederman, Real Party in Interest.**

**No. 2 CA–CIV 466.**

Court of Appeals of Arizona.

March 8, 1968.

Evans, Kitchel & Jenckes, by Earl H. Carroll, Phoenix, for petitioner.

Ralph R. Benson, Hollywood, and Ralph C. Morones, La Mirada, for real party in interest.

MOLLOY, Judge.

This certiorari proceeding seeks review of pretrial orders, entered in a civil action, denying the plaintiff's Rule 34 motion for inspection of documents, correspondence and records, and upholding an objection to a Rule 36 request for admissions. Conflicting policies of full discovery versus privilege against self-incrimination vie with each other in these pretrial gambits.

No prior Arizona decision has been called to our attention which reviews by special writ, as we are now doing, the *denial* of discovery in the trial court. Dean v. Superior Court, 84 Ariz. 104, 324 P.2d 764, 73 A.L.R.2d 1 (1958), blazed a trail in this state for reviewing the *granting* of discovery by writ of prohibition. In *Dean*, traditional language ("* * * in excess 'of jurisdiction * * *"—84 Ariz. at 109, 324 P.2d 764) was used, but in State ex rel. Ronan v. Superior Court, 95 Ariz. 319, 322, 390 P.2d 109, 111 (1964), our Supreme Court frankly adopted the California view that an "* * * abuse of discretion" may be reviewed by special writ.

In California, it is well established that a denial of proper pretrial discovery may be corrected by special writ. Chapin v. Superior Court, 239 Cal.App.2d 851, 49 Cal. Rptr. 199 (1966); Flora Crane Service, Inv. v. Superior Court, 234 Cal.App.2d 767, 45 Cal.Rptr. 79 (1965); Regents of University of Cal. v. Superior Court, 200 Cal. App.2d 787, 19 Cal.Rptr. 568 (1962); Carlson v. Superior Court of Los Angeles County, 56 Cal.2d 431, 15 Cal.Rptr. 132, 364 P.2d 308 (1961); West Pico Furniture Co. v. Superior Court, 56 Cal.2d 407, 15 Cal.Rptr. 119, 364 P.2d 295 (1961); Singer v. Superior Court of Contra Costa County, 54 Cal.2d 318, 5 Cal.Rptr. 697, 353 P.2d 305 (1960); Dowell v. Superior Court, 47 Cal. 2d 483, 304 P.2d 1009 (1956); McClatchy Newspapers v. Superior Court, 26 Cal.2d 386, 159 P.2d 944 (1945).

The California courts afford such relief under the label of a writ of mandate, but we believe certiorari equally appropriate for the particular relief requested. Hastings v. Thurston, 100 Ariz. 302, 413 P.2d 767 (1966); Ward v. Stevens, 86 Ariz. 222, 344 P.2d 491 (1959); State v. Superi-

or Court, 6 Ariz.App. 414, 433 P.2d 65 (1967). California is not alone in granting special writs to remedy improper denial of discovery, as indicated by cases annotated commencing 95 A.L.R.2d at 1241.

We agree with California that appeal is not an adequate remedy for denial of discovery because a litigant has a right to:

"* * * the means of obtaining in advance of the trial information concerning the issues and the means of producing at the trial the evidence necessary to sustain his action or defense." *McClatchy*, 159 P.2d at 948–949.

The real party in interest, Lederman, is one of the defendants in an action pending in the respondent court, wherein the plaintiff Phelps Dodge seeks to recover damages for the alleged conspiracy of the defendants to defraud it by bribing its employees to increase the copper content of samples from scrap shipments sent by defendants to the Phelps Dodge Corporation smelter at Douglas, Arizona. On July 21, 1966, in Los Angeles, California, Phelps Dodge took the deposition of Lederman and another defendant. The latter claimed the privilege against self-incrimination as to numerous questions propounded to him. Lederman, however, did not invoke his Fifth Amendment privilege as to any questions asked of him and denied, *inter alia*, that he knew a Mr. M——, a Phelps Dodge employee purportedly bribed.

The Rule 36 request asked Lederman to admit that he had purchased a cashier's check payable to M——, a copy of which was attached to the request. The Rule 34 motion for inspection was directed to all records and correspondence in the possession of Lederman pertaining to his shipments and sales of scrap metal to the Douglas smelter of Phelps Dodge. Lederman filed written objections on the grounds that answers would tend to incriminate him. The lower court sustained Lederman's objections to both the motion for inspection and the request for admissions "on the basis of a claim of a privilege against self-incrimination."

The record below would indicate that no argument was presented to the trial court as to individualized treatment in ruling upon the respective objections. Since the governing principles differ, as we shall subsequently point out, we deem it necessary to consider each discovery request separately.

## MOTION FOR INSPECTION

The petitioner challenges the trial court's ruling on two grounds: (1) failure to examine the documents sought to be inspected before ruling on the claim of privilege, and (2) the privilege had been waived.

The petitioner contends the mere assertion of the privilege against self-incrimination, without more, was insufficient. It argues that Lederman should have been required to produce the documents sought to be inspected so that the court might examine them to determine whether they contained matters which might tend to incriminate. Courts on occasion have deemed such procedure to be appropriate. See, e. g., Leahy v. City of Knoxville, 193 Tenn. 242, 245 S.W.2d 772, 775 (1951); and Manning v. Mercantile Securities Co., 242 Ill. 584, 90 N.E. 238, 241 (1909).

The claim of the privilege against self-incrimination is fraught with difficulties for which the courts have sought to make adequate provision. As Judge Learned Hand, in United States v. Weisman, 111 F.2d 260 (2d Cir. 1940), aptly commented:

"Obviously a witness may not be compelled to do more than show that the answer is likely to be dangerous to him, else he will be forced to disclose those very facts which the privilege protects. Logically, indeed, he is boxed in a paradox, for he must prove the criminatory character of what it is his privilege to suppress just because it is criminatory. The only practicable solution is to be content with the door's being set a little ajar, and while at times this no doubt partially destroys the privilege, and at times it permits the suppression of competent evidence, nothing better is available." 111 F.2d at 262.

Apparently the trial court here concluded it was unnecessary to peek through any crack in the door to determine whether the privilege was properly claimed, and we see no abuse of discretion in its so doing.

■ The constitutional guarantee against testimonial compulsion embraces not only testimony which is directly incriminatory but also that which would furnish a link in the chain of evidence needed to prosecute the one claiming the privilege, Blau v. United States, 340 U.S. 159, 71 S.Ct. 223, 95 L. Ed. 170 (1950); Wales v. Tax Commission, 100 Ariz. 181, 412 P.2d 472 (1966). The privilege may be invoked when the claimant has reasonable cause to apprehend danger. Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951); Mason v. United States, 244 U.S. 362, 37 S.Ct. 621, 61 L.Ed. 1198 (1917).

■ We believe the very nature of this action makes it evident that there is some cause "to apprehend danger" from the request to inspect these records and correspondence. Phelps Dodge's claim for relief is entirely predicated upon the alleged "deliberate and fraudulent conduct" of the defendants. Although we do not profess to omniscience, we are unable to conceive of anything in the documents sought which would be either material to this action or conducive to the discovery of material evidence and which would not be equally pertinent to a criminal prosecution under one of several criminal statutes. See, e. g., A.R.S. §§ 13–312; 13–331, subsec. A, par. 4; 13–661, subsec. A, par. 3. Particularly pertinent is the fact that Phelps Dodge does not point out a likely category of evidence which would be both noncriminatory and useful for its trial preparation. Absent such showing, we hold the trial court did not abuse its discretion in refusing to make the substantial effort of examining in camera the multifarious documents designated in the motion for inspection.

The petitioner further argues that even if there was a reasonable basis for claiming the privilege, the privilege was waived by Lederman when his deposition was taken by the petitioner.

■ It is recognized that the privilege against self-incrimination may be "waived." Brown v. United States, 356 U. S. 148, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958); State v. Taylor, 99 Ariz. 85, 407 P.2d 59 (1965); 8 Wigmore, Evidence § 2275 (McNaughton Revision 1961). A waiver is generally defined as the "intentional relinquishment of a known right." Albert v. Joralemon, 271 F.2d 236 (9th Cir. 1959); State v. Anderson, 96 Ariz. 123, 392 P.2d 784 (1964).

In dealing with a Fifth Amendment "waiver," however, courts seldom refer to this classic definition. More often, courts fasten upon objective criteria which, as a matter of law, are held to be a waiver. See, e. g., Brown v. United States, 356 U.S. 148, 155–156, 78 S.Ct. 622, 627, 2 L.Ed.2d 589 (1958). A law review note states:

"* * * waiver through testimony is a fiction—the witness is *held* to have waived his right for reasons which often have little to do with his subjective desire." 14 Stan.L.Rev. 811, 813, Waiver of the Privilege Against Self-Incrimination (1962).

Occasionally the question of a true waiver has presented itself, i. e., a question of whether the witness has intentionally given up his Fifth Amendment privilege by a statement or declaration to this effect. In such instances, courts have evidenced great reluctance to find a waiver. See Emspak v. United States, 349 U.S. 190, 75 S.Ct. 687, 99 L.Ed. 997 (1955).

■ There is a decisive difference between the "waiver" resulting from a party taking the stand in a civil case as opposed to a criminal case. In a civil case, no witness may refuse to take the stand by invoking the testimonial privilege; he may only refuse to give answers that tend to incriminate. Brown v. United States, 356 U.S. 148, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958); McCormick on Evidence § 131, at 275; Udall, Arizona Law of Evidence § 98, at 160. But the

accused in a criminal action has the absolute right to remain off the witness stand and his very taking of the stand is regarded as a "waiver." State v. Taylor, 99 Ariz. 85, 407 P.2d 59 (1965) ; and see McCormick on Evidence § 131, and Udall, Arizona Law of Evidence § 98.

As to civil actions, the landmark case is Brown v. United States. In this opinion, a line is drawn between the claim of privilege by a witness who is "compelled to testify" (78 S.Ct. at 627), as opposed to a claim by one who is "a voluntary witness" (78 S.Ct. at 627). In *Brown,* the court reaffirms (78 S.Ct. at 626) its previous pronouncements in Arndstein v. McCarthy, 254 U.S. 71, 41 S.Ct. 26, 65 L.Ed. 138 (1920) ; 262 U.S. 355, 43 S.Ct. 562, 67 L.Ed. 1023 (1923) ; 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158 (1924), as to the involuntary witness. In *Arndstein,* the contention was made that an involuntary bankrupt who filed schedules of property was not permitted to claim the privilege when being examined orally as to those schedules. In rejecting the contention of waiver, the court said in the second *Arndstein* opinion (all three opinions are in harmony) :

"* * * that where the previous disclosure by an ordinary witness is not an actual admission of guilt or incriminating facts, he is not deprived of the privilege of stopping short in his testimony whenever it may fairly tend to incriminate him. * * * [I]t is the sound rule which should be applied to the involuntary examination of a bankrupt *where he is practically in the position of a witness under cross-examination.* And since we find that none of the answers which had been voluntarily given by Arndstein,

either by way of denials or partial disclosures, amounted to an admission or showing of guilt, we are of opinion that he was entitled to decline to answer further questions when so to do might tend to incriminate him." (Emphasis added.) 43 S.Ct. at 563.

As to the "voluntary" witness, *Brown* holds that "[s]he could not take the stand to testify in her own behalf and also claim the right to be free from cross-examination on matters raised by her own testimony on direct examination." (78 S.Ct. at 627.) *Brown* refrains from using the word "waiver" in its pronouncements and its reasoning would suggest that perhaps semantical reclassification is in order. If so, we would suggest that the "voluntary witness" type of "waiver" be placed, as a separate genus, under the phylum "judicial estoppel," or "estoppel by oath," see 28 Am. Jur.2d Estoppel and Waiver § 71, at 700–701.

*Brown* was not concerned with a second type of "waiver" recognized in civil actions arising when a witness without claim of privilege testifies to basic, criminating facts and then seeks to stop short of giving details which would not further incriminate.[1] This type of "waiver"[2] is demonstrated by the decision of Rogers v. United States, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951), in which the Court stated:

"Requiring full disclosure of details after a witness freely testifies as to a criminating fact does not rest upon a further 'waiver' of the privilege against self-incrimination. Admittedly, petitioner had already 'waived' her privilege of silence when she freely answered criminating questions relating to her connection with

---

1. That *Brown* was not concerned with this latter type of waiver is indicated by the following:

  "The testimony of petitioner in the present case admittedly did not amount to 'an admission of guilt or furnish clear proof of crime,' but was, on the contrary, a denial of any activities that might provide a basis for prosecution." 78 S.Ct. at 626.

2. That this type of "waiver" is even further removed from classic concepts of waiver is noted at 14 Stan.L.Rev. at 814:

  "Used in this sense 'waiver' really has no independent significance; it simply reflects the logical point at which the privilege ceases by its own terms."

the Communist Party. But when petitioner was asked to furnish the name of the person to whom she turned over Party records, the court was required to determine, as it must whenever the privilege is claimed, whether the question presented a reasonable danger of further crimination in light of all the circumstances, including any previous disclosures. As to each question to which a claim of privilege is directed, the court must determine whether the answer to that particular question would subject the witness to a 'real danger' of further crimination." 71 S.Ct. at 442.

Cf. State ex rel. Lee v. Cavanaugh, 419 S.W.2d 929 (Mo.App.1967).

■ As in *Brown,* we are not concerned with this *Rogers*-type "waiver." We have read the deposition of Mr. Lederman in this action and nothing comes to our attention which would indicate he admitted facts which were criminatory in nature. More important, the petitioner here makes no contention that this witness basically incriminated himself on his deposition so as to require him to furnish the details of incriminating admissions.[3]

We do not believe Lederman can be classified as a "voluntary witness." His deposition indicates it was taken "pursuant to notice." A litigant in a civil action is subject to having his deposition taken in accordance with Rule 26, Rules of Civil Procedure, and he is subject to sanctions if he fails to appear at the designated time for this purpose. Rule 37(d), R.Civ.P., 16 A.R.S.; and see American Title & Trust Co. v. Hughes, 4 Ariz.App. 341, 420 P.2d 584 (1966); O'Donnell v. Breuninger, 9 F.R.D. 245, 247 (1949)

Lederman as yet has made no attempt to make use of his testimony given at this deposition; if and when he does so, the rules of the game may be different. In essence, he did nothing more than appear at a designated time and place in response to a notice served by the adverse party, and give nonincriminating testimony. We do not have the clear danger of "distortion" which might result from his being permitted to relate testimony of noncriminatory facts without being required to give related criminatory facts which would color, modify or even negate the noncriminatory facts. See 8 Wigmore, Evidence § 2276, at 456–457 (McNaughton Revision 1961).[4]

The only apparent danger of "distortion" arises from the possibility that this deposition might be offered in evidence. If Phelps Dodge does so, it should not be permitted to complain of whatever distortion results from its own offer. Contrariwise, if the witness Lederman should seek

---

3. That this is not their contention is illustrated particularly by the following language in the Phelps Dodge written argument to this court:

"The most pertinent part of this testimony [deposition of Lederman] is on page 64, lines 2–7:

"'Q. Perhaps I asked this, but the thought seems to be of my co-counsel that I didn't: *Between 1958 and June 1, 1964 did you have any arrangement or un-understanding with Mr. Ivener whereby he was to make arrangements to have the Airways' samples hiked at the Douglas smelter?*

"'A. *Definitely not.*'

"If at any time during the deposition Lederman should have claimed the privilege, this was the most important time that it should have been done, because the question propounded expressly asks if Lederman participated in the hiking. Lederman chose to answer the question, therefore, by doing so, he cannot now deny plaintiff in Cause No. 23458 (petitioner herein) the opportunity to further explore this issue."

4. Judge Learned Hand has expressed this principle barring "distortion" in picturesque language:

"It must be conceded that the privilege is to suppress the truth, but that does not mean that it is a privilege to garble it; although its exercise deprives the parties of evidence, it should not furnish one side with what may be false evidence and deprive the other of any means of detecting the imposition." United States v. St. Pierre, 132 F.2d 837, 840 (2d Cir. 1942).

to introduce his own deposition in evidence (an unusual but occasionally used procedure, see, e. g., Richmond v. Brooks, 227 F.2d 490 (2d Cir. 1955)), the trial court would then have the problem of determining whether concepts of basic fairness should permit such use, see cases annotated 4 A.L.R.3d 545. See also Vevelstad v. Flynn, 230 F.2d 695, 702 (9th Cir. 1956). We believe the power of the trial court in this regard is sufficient to prevent the invocation of the Fifth Amendment privilege to "distort" or "garble" any material evidence contained in this deposition.

Supporting our conclusion here are Shendal v. United States, 312 F.2d 564 (9th Cir. 1963); and Merck & Co., Inc. v. Biorganic Laboratories, Inc., 87 N.J.Super. 23, 207 A.2d 711 (1965).

We appreciate that there are at least two cases taking a contrary view to that expressed in this opinion. To the extent that Regents of the University of Cal. v. Superior Court, 200 Cal.App.2d 787, 19 Cal. Rptr. 568 (1962), and Ratsep v. Mrs. Smith's Pie Company, 221 A.2d 598 (Del. Super.1966), are inconsistent with the view herein adopted, we believe these decisions are also inconsistent with the views of the United States Supreme Court as expressed in *Brown*, *Rogers* and *Arndstein*, and are otherwise unsupported by authority. Other than these two decisions, all cases called to our attention which support the thesis that there may be a "waiver" of the Fifth Amendment privilege on the taking of a deposition or by the answering of interrogatories fall into the category of the *Rogers*-type of "waiver", i. e., when the witness has given facts basically incriminating and it is only the details thereof that are sought subsequently. See, e. g., Stalder v. Stone, 412 Ill. 488, 107 N.E.2d 696, 35 A.L.R.2d 653 (1952) (cited in *Ratsep*); and see cases annotated at 72 A.L.R.2d at 837.

Another decision relied upon by the petitioner, Small Business Administration v. Barron, D.C., 240 F.Supp. 434 (1965), we distinguish on the same basis as we distinguish Johnson Harvester Co. v. Miller, 72 Mich. 265, 40 N.W. 429 (1888), the other decision relied upon in *Ratsep* for its conclusion that there can be waiver of the Fifth Amendment privilege by giving answers to pretrial discovery interrogation. Both *Barron* and *Johnson Harvester* fall, as we see them, in the category of "voluntary witness" cases, in which there is danger of "distortion." In each of these cases, we are not concerned with pretrial discovery, but rather with the trial of the factual issue itself and the giving of testimony to the trier of fact by a witness who later seeks to claim the privilege against self-incrimination when evidence which would prevent distortion is sought to be elicited.

It is our conclusion that Lederman did not "waive" his privilege by giving noncriminatory answers to the questions asked him at the time of the taking of his oral deposition. The trial court therefore properly upheld the privilege as to the discovery of the many private documents and records of this witness.

## REQUEST FOR ADMISSIONS

Contrariwise, as to the request for admissions, we see no basis for upholding a claim of privilege under the Fifth Amendment. To keep in perspective, it must be borne in mind that this is a civil action and not a criminal trial. The Fifth Amendment's provision against self-incrimination is directed, as is our own constitutional provision (art. 2, § 10, Ariz.Const., A.R.S.), against compelling any person "in any criminal case" to be a witness against himself. We see no intent to affect the rights of litigants in the ordinary civil action. The right of discovery in modern trial practice is of paramount importance. Allowing only unilateral discovery cannot help but tip the scales of justice in favor of the litigant avoiding discovery. To permit this privilege to frustrate fair discovery when there is no real danger of criminal penalty is to pervert the rule. The words of Jeremy Bentham still ring true: "Evi-

dence is the basis of justice; exclude evidence you exclude justice." [5]

As stated in Ullmann v. United States, 350 U.S. 422, 430–431, 76 S.Ct. 497, 502, 100 L.Ed. 511 (1956):

"But, as this Court has often held, the immunity granted need only remove those sanctions which generate the fear justifying invocation of the privilege: 'The interdiction of the 5th Amendment operates only where a witness is asked to incriminate himself,—in other words, to give testimony which may possibly expose him to a criminal charge." 76 S.Ct. at 502.

We are dealing with a rule of discovery which expressly provides:

"Any admission made by a party pursuant to such request is for the purpose of the pending action only and neither constitutes an admission by him for any other purpose nor may be used against him in any other proceeding." 16 A.R.S., Rule 36(b).

The rule in its inherent construction relieves a party from being compelled to respond to a request thereunder. It provides a built-in sanction for failing to answer:

"Each of the matters of which an admission is requested *shall be deemed admitted* unless, * * * the party to whom the request is directed serves upon the party requesting the admission either a sworn statement denying specifically the matters of which an admission is requested or setting forth in detail the reasons why he cannot truthfully admit or deny those matters, or written objections on the ground that some or all of the requested admissions are privileged [6] or irrelevant or that the request is otherwise improper in whole or in part * * *." 16 A.R.S., Rule 36(a).

The authorities are not in accord as to whether a Fifth Amendment privilege may be invoked to completely block a request for admission under this or a similar rule. We are inclined to favor the reasoning of the decisions denying the privilege. See Woods v. Robb, 171 F.2d 539 (5th Cir. 1948); United States v. LaFontaine, 12 F.R.D. 518 (1952); Stockham v. Stockham, 168 So.2d 320 (Fla.1964). [7]

Contrary decisions appear to us to demonstrate a basic misapprehension as to the nature of the privilege against self-incrimination. Federal Deposit Insurance Corp. v. Logsdon, D.C., 18 F.R.D. 57 (1955), purports to distinguish the *Woods* and *LaFontaine* decisions on the basis that they were not criminal actions but rather civil actions to recover treble damages. This is, of course, true, as it was in *Logsdon,* (a civil action to recover money on an alleged overdraft of a bank account). But, in *Woods* and *LaFontaine*, there was just as much reason to fear criminal prosecution as in *Logsdon.* [8]

---

5. 5 Bentham, Rationale of Judicial Evidence 1 (Hunt Ed. 1827).

6. We know of no judicial opinion which takes the view that this rule by the use of the word "privileged" permits a carte blanche Fifth Amendment privilege. It seems clear from the context that it is only when the requested admission itself contains privileged matter, i e., when the request seeks the party to admit the authenticity of a husband-wife letter—that the "requested admissions are privileged" in this context.

7. *Stockham,* under the provisions of Florida rules of practice, goes further than merely imposing a judicial admission as a sanction of a failure to respond; the case upholds a trial court's order giving the plaintiff the option of responding to a request to admit adultery or having her complaint for divorce stricken. That *Stockham* is not alone in granting such drastic relief in a civil action when a party insists upon the blocking of pretrial discovery by invocation of Fifth Amendment privilege, see cases annotated at 4 A.L.R.3d 545.

8. *Woods* was concerned with a violation of the Emergency Price Control Act of 1942, which in section 205(b) thereof provided for criminal penalties for a violation ranging from a fine of not more than $5,000 and/or imprisonment for not more than two years. *LaFon-*

█ Further, *Logsdon* assumes that Rule 36 must elicit "self-incriminating testimony" (18 F.R.D. at 58). Such is not the case. The party to whom such a request is addressed may simply ignore the request and his conduct is characterized by the rule itself, which indicates his silence will be deemed an admission "only" in the pending action. This is not "* * * *testimony* which might tend to show that he himself had committed a crime" (emphasis added). Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 198, 35 L.Ed. 1110 (1892).

Mayo v. Ford, 184 A.2d 38 (D.C.Mun. App.1962), in a divorce action, blocked a request for admission by sustaining the privilege, stating:

> "As it was proper to invoke the privilege [in resisting a request to admit that the defendant had a valid preexisting marriage], so would it have been improper to draw an inference of guilt therefrom. The Fifth Amendment protection against forced self-incrimination would be meaningless and hollow if the objective sought through the asking of the question could be achieved as well by a refusal to answer as by the answer itself. Under these circumstances, appellee's [defendant-husband's] refusal to respond to the request for admissions could not be considered evidence of the truth of the matter stated therein." 184 A.2d at 40.

In support of this far-reaching statement, the court cites only Slochower v. Board of Higher Ed. of City of N.Y. 350 U.S. 551, 557, 76 S.Ct. 637, 100 L.Ed. 692 (1956).

*Slochower* is a due-process decision, outlawing a provision in the charter of the City of New York which provided that a person would be automatically terminated from any municipal employment upon the assertion of a claim of a Fifth Amendment privilege. Broad language in the *Slochower* decision is to be read in context, a portion of which follows:

> "The privilege against self-incrimination would be reduced to a hollow mockery if its exercise could be taken as equivalent either to a *confession of guilt* or a *conclusive presumption* of perjury." (Emphasis added) 76 S.Ct. at 641.

We see nothing in *Slochower*, or its successor, Garrity v. State of New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed. 2d 562 (1967), which militates against drawing an adverse inference in a civil action from the claim of a Fifth Amendment privilege.

A clear enunciation of pertinent law is found in the *Brown* decision itself, in the portion thereof in which Justices Black, Warren and Douglas explain why they could not concur in the majority holding that there had been a waiver of privilege by the giving of direct testimony:

> "On the other hand *the failure of a party in a civil action to testify may be freely commented on by his adversary and the trier of fact may draw such inferences from the abstention as he sees fit on the issues in the case.* Bilokumsky v. Tod, 263 U.S. 149, 153–154, 44 S.Ct. 54, 55–56, 68 L.Ed. 221. Thus to apply the criminal rule of waiver to a civil proceeding may place a defendant in a substantial dilemma. If he testifies voluntarily he can be compelled to give incriminating evidence against himself; but, *unlike a defendant in a criminal case, if he remains off the stand his silence can be used against him as 'evidence of the most persuasive character.'* Bilokumsky ·v. Tod, supra, 263 U.S. at page 154, 44 S.Ct. at page 56." (Emphasis added.) 78 S.Ct. at 629.

Since *Brown* and *Slochower,* the Supreme Court has countenanced the drawing of an adverse inference from the assertion of Fifth Amendment privilege even in the field

---

-*taine* was concerned with a violation of the Defense Production Act of 1950 as amended, 50 U.S.C.A.Appendix § 2061 et seq., which Act in section 2073 provides

for criminal penalties ranging from a fine of $10,000 and/or imprisonment for not more than one year.

of loss of status or employment, an area in which the United States Supreme Court has demonstrated that it is particularly sensitive. See Kimm v. Rosenberg, 363 U.S. 405, 80 S.Ct. 1139, 4 L.Ed.2d 1299 (1960); Lerner v. Casey, 357 U.S. 468, 78 S.Ct. 1311, 2 L.Ed.2d 1423 (1958); and Beilan v. Bd. of Public Education of Philadelphia, 357 U.S. 399, 78 S.Ct. 1317, 2 L.Ed.2d 1414 (1958).

Allowance of an adverse inference in a civil action from the invocation of this privilege is sound in theory, see 8 Wigmore, Evidence § 2272(e) at 439 (McNaughton Revision 1961); Model Code of Evidence, Rule 233; Udall, Arizona Law of Evidence § 91, at 137–139; and McCormick on Evidence § 80, at 163–164, and has been approved in this state, Buzard v. Griffin, 89 Ariz. 42, 48, 358 P.2d 155, 158 (1960) (though under the "peculiar circumstances" of that case, it was held the adverse inference "vanished and was extinguished" when Buzard took the stand at the trial and testified fully on the matters at issue).

A law review article advocating a contrary result to that enunciated here is unpersuasive. Finman, The Request for Admissions in Federal Civil Procedure, 71 Yale L.J. 371 (1962). The author reaches the conclusion that the basic reason for upholding a Fifth Amendment claim of privilege in opposition to a Rule 36 request for admission is that the admission of the particular fact may be the precipitating cause of criminal charges. 71 Yale L.J. at 385. He criticizes the *Logsdon* decision because an indictment against the defendant in that case had already been returned when the request for the admission had been made. If Finman's reasoning is sound, then we see only the most insubstantial grounds for frustrating this rule of discovery. Assuming there are prosecutors following the proceedings in a civil action such as this, it would seem equally probable that they would be stimulated into action by a direct assertion of the privilege to a Rule 36 request as by a failure to respond to the request, an option clearly left open under this Rule.

For the reasons given, the action of the trial court in sustaining the objection to the motion for inspection is upheld and the sustaining of the objection to the request for admission is reversed. In order to avoid any possibility of mistaken reliance upon law contrary to that herein enunciated, the defendant Lederman should be given ten days after remand of this action in which to answer (or fail to answer) petitioner's request for admission.

HATHAWAY, C. J., and KRUCKER, J., concur.