524 P.2d 157

David B. GILBERT, Petitioner,

v.

Hon. Robert E. McGHEE, Respondent;

Wanda M. GILBERT, Real Party in Interest.

No. 11477–PR.

Supreme Court of Arizona,
In Banc.

July 8, 1974.

Rehearing Denied Sept. 17, 1974.

**122**

Alan L. Slaughter, Payson, for petitioner.

Leven B. Ferrin, Phoenix, for real party in interest.

STRUCKMEYER, Justice.

On December 7, 1973, petitioner filed a special action in the Court of Appeals, Division Two, directed against his former wife, Wanda M. Gilbert, as the real party in interest, and The Honorable Robert E. McGhee, Judge of the Superior Court of Gila County, Arizona, alleging that petitioner had been found in contempt of court by Judge McGhee for his refusal to answer certain questions propounded to him. The Court of Appeals held that the adjudication of petitioner as guilty of contempt was erroneous, 21 Ariz.App. 195, 517 P.2d 1088 (1974). We accepted review to determine whether petitioner can claim the privilege against self-incrimination so as to be free from cross-examination on matters relevant to previous testimony.

Petitioner initially brought an action for divorce in the Superior Court of Gila County. His wife, Wanda M. Gilbert, subsequently filed a separate action, and the two actions were consolidated for trial. Petitioner's deposition was taken pursuant to stipulation and he also testified at the trial, although the record does not indicate whether it was to the same effect as the testimony given on his deposition. Presumably it was, since we find no assertion to the contrary.

Prior to petitioner testifying at his deposition, he gave to the attorney for Mrs. Gilbert a list of Time Certificates of Deposit with the Banco Nationale de Mexico. Petitioner then testified:

"Q. The Time Certificate deposits in Mexico, whose name are they in?

A. Mine.

Q. Your's alone?

A. Alone.

Q. Did you do this with the consent of your wife?

A. No. I run the business in my family."

Petitioner also testified:

"Q. That is all the money you have in Time Certificates deposited in Mexico?

A. Yes."

And:

"Q. You have no other savings accounts, checking accounts or Time Certificates of Deposit or any other deposits of any other nature in Mexico, other than you have listed here?

A. That is correct."

And again:

"Q. Do you have any deposits of money in any type of account, Time Certificates of Deposit in any place else besides Mexico or the United States?

A. That's all I have outside the United States."

Thereafter, on the 24th day of May, 1971, the Superior Court granted to the parties a decree of divorce and divided, pursuant to A.R.S. § 25–318, the community assets, including the certificates of de-

posit in the Banco Nationale de Mexico, disclosed by petitioner.

Subsequently, Mrs. Gilbert was made aware of six certificates of deposit, herein referred to as Exhibit #4, totaling $174,000.00 which had not been disclosed by petitioner, nor had they been disposed of in the decree of divorce. She reopened the divorce case seeking to compel discovery from petitioner with regard to claims of property not divulged prior to entry of the decree. Petitioner was called for examination, and the following, in part, occurred under cross-examination by counsel for Mrs. Gilbert:

"Q. Will you please state your name?

A. David B. Gilbert.

Q. And your occupation or profession?

WITNESS: Your Honor, I refuse to answer this question on the ground it may tend to incriminate me in this action.

\* \* \* \* \* \*

Q. Doctor, is it not a fact that you are a physician licensed to practice medicine in the State of Arizona?

A. The same answer, counselor.

Q. Where do you live?

A. The same answer.

Q. You are refusing to answer where you live?

A. Yes, indeed.

Q. Is it not true you live in Payson, Arizona?

A. The same answer.

Q. And is it not true you are actively engaged in the practice of medicine in Payson?

A. The same reply.

\* \* \* \* \* \*

Q. Now, Doctor, I hand you Exhibit #4 in evidence and ask you if you have ever seen the originals of those time certificates of deposit.

A. I refuse to answer on the basis that the answer might tend to incriminate me.

\* \* \* \* \* \*

Q. \* \* \* Now, Doctor, looking at Exhibit #4, we have here as part of that a number that says 121007, and the date on it of November 1, 1968. Can you tell us if you have seen that particular document before?

A. The same answer, counselor.

Q. By that you mean you refuse to answer on the ground it may tend to incriminate you?

A. That is correct."

Thereafter, Judge McGhee held petitioner in contempt of court for refusing to answer the questions propounded to him. The record does not at any place disclose the reason petitioner felt his answers would tend to incriminate him. Nor does counsel for petitioner suggest how his client might have been incriminated. Nonetheless, the Court of Appeals took the view that if, in fact, the six time certificates of deposit, being Exhibit #4, had been purchased by petitioner and he had lied about them in his prior sworn testimony and/or had failed to report the income therefrom, the threat of criminal prosecution under either state or federal law would be possible.

In Arizona at the time of the entry of judgment in this case, all property acquired by either husband or wife during the marriage, except that which was acquired by gift, devise or descent, or earned by the wife and her minor children while she lived separate and apart from her husband, was the community property of the husband and wife, A.R.S. § 25–211. Prior to the 1973 amendment of § 25–211, during coverture the personal property could be disposed of by the husband only. See A.R.S. § 25–211(B). We have repeatedly held under § 25–211(B) that the husband was in charge of the business affairs of the community and that his position was analogous to that of a trustee. *See, e. g.,* Spector v. Spector, 94 Ariz. 175, 382 P.2d

659 (1963); Mortensen v. Knight, 81 Ariz. 325, 305 P.2d 463 (1956).

It should be categorically stated that we can find no suggestion or inference whatsoever that either the State or Federal Government has been defrauded by tax evasion practices. Opposed to the nebulous concept of tax evasion announced by the Court of Appeals as a ground for permitting the invocation of the right against self-incrimination is the plain fact that the immunity from incrimination can be converted into a license by petitioner, under the guise of a constitutional right, to conceal a wife's interest in community assets.

The action of petitioner in claiming incrimination in response to questions concerning his profession, whether he was licensed to practice medicine, and where he lived is plainly and obviously contumacious, but we do not predicate this decision on those claims. We treat the gravamen here as petitioner's refusal to answer any questions concerning the six certificates of deposit, Exhibit #4, which he previously failed to disclose. It is not the fact that petitioner has certificates of deposit to funds in the Banco Nationale de Mexico which is of importance at this stage of the proceedings; it is the necessity of establishing the community character of the funds. As to this, being in the nature of cash deposits, only petitioner's testimony can fully illuminate their source.

■ The voluntariness of petitioner's testimony is apparent. He, as plaintiff in the divorce action and as trustee of the community assets, must have been aware that he would be required to disclose the source and nature of funds in his possession and control. His examination into this aspect of the marital relationship was inevitable. Having testified on the relevant issue of the amount and character of the community property, he could not refuse to disclose further details under a claim of compulsory incrimination.

■ The classical waiver of the privilege against self-incrimination arises where there has been a voluntary answer as to materially incriminating facts. Thereafter the witness cannot stop short and refuse further testimony of the details. Rogers v. United States, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951), quoting from Foster v. People, 18 Mich. 266 (1869).

The classical waiver was departed from in Brown v. United States, 356 U.S. 148, 78 S.Ct. 622, 2 L.Ed.2d 589, 72 A.L.R.2d 818 (1958). There, Petitioner Brown took the stand as a witness in her own behalf in a denaturalization proceeding, testifying among other things, that she had never taught or advocated the overthrow of the existing government or belonged to any organizations that so advocated. She did not testify to incriminating facts. On cross-examination, the Government put to the petitioner the question, "Are you now or have you ever been a member of the Communist Party of the United States?" and other questions relating to Communist activities since 1946. Petitioner refused to answer, claiming the privilege against self-incrimination. The claim of incrimination was denied, the Court analogizing that the breadth of waiver is determined by the scope of relevant cross-examination as in criminal cases. The Court said:

"The interests of the other party and regard for the function of courts of justice to ascertain the truth become relevant, and prevail in the balance of considerations determining the scope and limits of the privilege against self-incrimination." 356 U.S. 148, 156, 78 S.Ct. 622, 627, 2 L. Ed.2d 589, 597.

We hold that since petitioner brought the action and since it was inevitable that he would be required to testify to all relevant matters, he opened the door to cross-examination on those matters material to the complete determination of the action.

The judgment of the Superior Court was not erroneous, and the petition for special action is ordered dismissed as improvidently issued.

HAYS, C. J., CAMERON, V. C. J., and LOCKWOOD and HOLOHAN, JJ., concur.