MEYER v WALKER LAND RECLAMATION, INC

Docket No. 48657. Submitted November 13, 1980, at Detroit.—Decided
February 4, 1981.

Charles Meyer, a former employee of Walker Land Reclamation,
Inc., brought an action against Walker for recovery of money
owing on a loan. Walker counterclaimed for damages, alleging
that while he was in its employ Meyer had converted sums of
money belonging to the corporation to his own use. The defen-
dant conducted a deposition of the plaintiff, at which the
plaintiff refused to answer certain questions, invoking the
privilege against self-incrimination. The defendant obtained an
order to compel answers and, at a subsequent deposition, the
plaintiff again refused to answer the earlier questions, this time
on the basis that the questions were irrelevant. Thereafter, the
Macomb Circuit Court, Raymond R. Cashen, J., dismissed the
plaintiff's complaint and entered a default judgment on the
defendant's counterclaim. The plaintiff and his counsel were
not permitted to participate in a subsequent hearing to deter-
mine damages. Plaintiff appeals, alleging that the trial court
erred in ordering him to answer the questions after he invoked
the privilege against self-incrimination, that dismissal of his
action and entry of default against him on the counterclaim
was improper, and that the denial of the right to participate in
the hearing on damages was error. *Held:*

1. The trial court erred in determining that no answer which
the plaintiff might give could incriminate him. The plaintiff,
however, by bringing an action wherein he must have known

[1] 81 Am Jur 2d, Witnesses §§ 63, 64.
Testifying in civil proceeding as waiver of privilege against self-
incrimination. 72 ALR2d 830.
[2] 81 Am Jur 2d, Witnesses §§ 36, 39.
[3] 81 Am Jur 2d, Witnesses § 62 *et seq.*
[4] 46 Am Jur 2d, Judgments § 682.
47 Am Jur 2d, Judgments § 1172.
[5] 47 Am Jur 2d, Judgments § 1186 *et seq.*
Defaulting defendant's right to notice and hearing as to determina-
tion of amount of damages. 15 ALR3d 586.

that the defendant would counterclaim for the amounts allegedly converted, is held to be a voluntary, rather than an involuntary, witness and thereby waived his right to invoke the privilege against self-incrimination.

2. Entry of the default judgment against the plaintiff, and the dismissal of the plaintiff's action, was not an abuse of the trial court's discretion.

3. A default admits the right to recover but not the amount of damages. Damages should be determined at a proceeding in which the defaulted party is allowed to participate. The award of damages is reversed and the matter remanded for a hearing on the issue of damages only, in which the plaintiff is to be permitted to participate.

Affirmed in part, reversed in part, and remanded.

1. WITNESSES — VOLUNTARY WITNESSES — PRIVILEGE AGAINST SELF-INCRIMINATION.

A witness who voluntarily testifies may not claim the privilege against self-incrimination on matters which have been put into issue by his own testimony.

2. WITNESSES — INVOLUNTARY WITNESSES — PRIVILEGE AGAINST SELF-INCRIMINATION.

A witness who testifies involuntarily has no occasion to invoke the privilege against self-incrimination until testimony sought to be elicited will in fact tend to incriminate; that point is identified by a determination of whether the evidence up to that point has amounted to an admission of guilt or furnished clear proof of crime.

3. WITNESSES — DEPOSITIONS — PRIVILEGE AGAINST SELF-INCRIMINATION.

A party who has been served with notice of the taking of a deposition and who testifies at the deposition is an involuntary witness; however, a plaintiff who has filed an action which he must have known would elicit a counterclaim for money diverted from the profits of the defendant corporation is a voluntary witness for purposes of the application of the privilege against self-incrimination and, therefore, has waived the privilege.

4. JUDGMENTS — DEFAULT — APPEAL — COURT RULES.

A trial court may dismiss an action or enter judgment of default if a party refuses to obey an order requiring him to answer designated questions, and where such action has been taken it

will not be disturbed on appeal absent an abuse of discretion (GCR 1963, 313.2[2]).

5. JUDGMENTS — DEFAULT — DAMAGES — COURT RULES.
    A default admits the right of the party taking the default to recover but not the amount of damages; assessment of damages should be made at a hearing in which the defaulted party is permitted to participate (GCR 1963, 520.2[2]).

*Boyer & Churilla, P.C.,* for plaintiff.

*William J. McGrail, Jr.,* for defendant.

Before: BRONSON, P.J., and J. H. GILLIS and CY-NAR, JJ.

J. H. GILLIS, J. Plaintiff appeals the lower court's entry of orders dismissing his complaint and entering default judgment on defendant's counterclaim.

Between 1956 and 1969, plaintiff owned almost 99% of the stock in defendant corporation. In 1969, he sold off enough of the corporate stock to leave him with a 30% interest. A part of this transaction involved a loan of $6,667 to the corporation.

On July 16, 1974, plaintiff filed suit seeking return of $4,726.26 still owing on the loan. In its answer, defendant admitted that this amount was indeed outstanding, but defendant denied that it was indebted to plaintiff for any sum of money. The basis for this denial was set forth in the counterclaim; to-wit, that plaintiff had, while employed as manager of defendant after 1969, "intentionally converted and kept for his own use various and numerous monies belonging to the corporation as receipts and/or income".

Plaintiff was deposed on August 20, 1975, upon notice from defendant. In his deposition testimony, plaintiff stated the defendant's income was derived

mainly from money paid by corporations and individuals who wished to dump solid waste at defendant's landfill. After the 1969 stock transaction, plaintiff managed the landfill, accepting cash and checks in payment for the privilege of dumping solid waste. Of the money he received, a portion was deposited in the corporate bank account. The remainder, mostly cash, was "used for corporate expenditures".

An integral part of processing the money through the corporate structure entailed turning in copies of receipts given to customers. However, plaintiff did not forward copies of all receipts. Rather, he testified that he did not forward receipts from the cash transactions which "were used for corporate expenditures". When defense counsel asked what the corporate expenditures were, plaintiff refused to answer on the ground that it might incriminate him.

Resuming the dialogue between the plaintiff and defense counsel, plaintiff testified that Mitchell Foster orally gave him the authority to divert the money during a conversation in the fall of 1969. On the basis of the privilege against self-incrimination, however, plaintiff refused to divulge the contents of that conversation. The privilege was also invoked as to (1) why he converted checks payable to the corporation into cash via a checking account in the assumed name of a business he set up; (2) why another employee who collected cash receipts at the landfill turned the money over to plaintiff; (3) where the diverted money went; and (4) the names of the companies to whom plaintiff might have paid the cash. Plaintiff did clearly state, however, that he did not use the cash for personal purposes, and that he only converted $4,815 between 1969 and 1973.

Subsequent to the August 20, 1975, deposition,

defendant moved for an order to compel answers or enter default. On November 10, 1975, the motion was denied, but, on rehearing, the trial court granted the motion on the basis that (1) no possible answer could have incriminated plaintiff, given that he stated that the money was used for corporate expenditures: "If in fact the monies were used properly, which is Meyer's testimony, how could answers then incriminate?"; and (2) plaintiff's testimony as to "corporate receipts and disbursements precludes [him] from now refusing to answer inquiries that naturally flow from the prior answers". By order dated July 13, 1976, plaintiff was ordered to answer the questions previously put to him as to which he had pled the privilege, and any questions prompted by those answers.

At the subsequent deposition, on August 9, 1976, the first substantive question asked of plaintiff was what the corporate expenditures were. Plaintiff's attorney immediately objected on the basis that the question and answer would be irrelevant. Further, he stated that all of the questions on which plaintiff previously pled the privilege against self-incrimination would also be irrelevant. Plaintiff confirmed the refusal to answer on the sole basis of irrelevancy, not the privilege against self-incrimination.

On December 8, 1976, pursuant to defendant's motion, an order was entered dismissing plaintiff's complaint with prejudice and placing plaintiff in default on defendant's counterclaim.

On November 13, 1979, default judgment was entered. Damages were determined on the basis of evidence presented solely by defendant at a hearing at which the court denied plaintiff or his attorney any right of participation. Defendant was awarded $30,391 damages plus $10,700.06 interest and $253.60 taxable costs, for a total of $41,344.66.

On appeal, plaintiff asserts three claims of error. The first argues that the trial court erred in ordering plaintiff to answer the questions on which he pled the privilege against self-incrimination. A second assertion of error is that the trial court improperly dismissed plaintiff's complaint and entered a default on defendant's counterclaim. Finally, plaintiff claims that the trial court erred in denying plaintiff the right to participate at the hearing to establish defendant's damages.

I

In considering whether plaintiff properly invoked the privilege against self-incrimination at the deposition, we must first determine whether the answers to the questions might have tended to incriminate plaintiff. *In re Vickers,* 371 Mich 114, 117; 123 NW2d 253 (1963).

The trial court in this case determined that no answer plaintiff might give could incriminate him. This determination was incorrect.

Plaintiff testified at the first deposition that he used the diverted cash for corporate expenditures, not for personal purposes. However, he never claimed that such expenditures were legal. Bearing in mind that plaintiff managed a sanitary landfill, we find that the cash could have been used to pay off government officials in an effort to avoid full compliance with state law. See, MCL 325.298; MSA 14.435(8), which provided that a violation of MCL 325.291 *et seq.;* MSA 14.435(1) *et seq.* (the act regarding landfills), is a misdemeanor.[1]

---

[1] MCL 325.291 *et seq.;* MSA 14.435(1) *et seq.,* were repealed and replaced by the Solid Waste Management Act, 1978 PA 641, MCL 299.401 *et seq.;* MSA 13.29(1) *et seq.,* effective January 11, 1979.

Our conclusion that plaintiff could have incriminated himself by answering the questions to which he objected is further supported by a statement made by his attorney at the November 22, 1976, hearing on defendant's motion for dismissal and default:

"[Plaintiff] indicated that they were for corporate purposes when they asked who the payments were made to[,] and I remind you this is a landfill operation wherein there, as we suggested on previous occasions, [have] been some illegal payments made[,] and he refused to testify."

The next question we must consider is whether plaintiff waived the right to invoke the privilege against self-incrimination because he freely testified that he had diverted money from the corporation. The trial court found that this testimony obligated plaintiff to answer "inquiries that naturally flow from the prior answers".

The question of waiver turns first upon whether the witness is voluntary or involuntary. Where a witness voluntarily testifies, he may not claim the privilege on matters put into issue by his own testimony. *Brown v United States,* 356 US 148; 78 S Ct 622; 2 L Ed 2d 589 (1958), *Foster v People,* 18 Mich 266, 276 (1869). However, when the witness testifies involuntarily, he "has no occasion to invoke the privilege against self-incrimination until testimony sought to be elicited will in fact tend to incriminate". *Brown, supra,* 155. The point at which the privilege may be invoked by an involuntary witness is identified by determining whether the evidence up to that point amounted to an admission of guilt or furnished clear proof of crime. *Arndstein v McCarthy,* 254 US 71, 72; 41 S Ct 26; 65 L Ed 138 (1920), *McCarthy v Arndstein,*

262 US 355, 358; 43 S Ct 562; 67 L Ed 1023 (1923). Further, even if prior evidence is incriminating, we must still determine whether the next questions asked the involuntary witness "presented a reasonable danger of further crimination in light of all the circumstances, including any previous disclosures". *Rogers v United States,* 340 US 367, 374; 71 S Ct 438; 95 L Ed 344; 19 ALR2d 378 (1951), *reh den* 341 US 912; 71 S Ct 619; 95 L Ed 1348 (1951).

The question whether a party is a voluntary or involuntary witness at a deposition has not been decided in Michigan. In *Phelps Dodge Corp v Superior Court of Cochise County,* 7 Ariz App 277; 438 P2d 424 (1968), however, the Arizona Court of Appeals considered the issue and ruled as follows:

> "We do not believe Lederman can be classified as a 'voluntary witness.' His deposition indicates it was taken 'pursuant to notice.' A litigant in a civil action is subject to having his deposition taken in accordance with Rule 26, Rules of Civil Procedure, and he is subject to sanctions if he fails to appear at the designated time for this purpose. Rule 37(d), R Civ P, 16 ARS; and see *American Title & Trust Co v Hughes,* 4 Ariz App 341, 420 P2d 584 (1966); *O'Donnell v Breuninger,* 9 FRD 245, 247 ([D DC] 1949)." *Id.,* 283.

A similar conclusion may be made here. GCR 1963, 305.1 states that:

> "Service on a party, or his attorney, of notice of the taking of the deposition of a party * * * is sufficient to require the appearance of the deponent and a subpoena need not be issued."

GCR 1963, 313.4 states that, on failure of the party to appear after being served with proper notice, the court on motion, *inter alia,* may strike

certain pleadings, dismiss the action, or enter a judgment of default. Thus, if we apply the *Phelps Dodge* rationale, plaintiff was an involuntary witness.

In *Phelps Dodge, supra,* Lederman was a defendant, and there is nothing to indicate that he had filed any sort of counterclaim. In the within case, Charles Meyer is the plaintiff, although he was deposed with regard to defendant's counterclaim. We must therefore consider whether plaintiff waived the privilege against self-incrimination by filing a suit which he must have known would elicit a counterclaim for the money diverted from corporate income. Certainly, if his right to invoke the privilege is upheld, plaintiff has effectively foreclosed defendant's ability to establish its damages on the counterclaim, beyond the $4,815 plaintiff admitted he had diverted.[2] Coincidentally, this amount is only $88.74 more than the amount plaintiff claimed was outstanding on his loan to the corporation.

In *Gilbert v McGhee,* 21 Ariz App 195; 517 P2d 1088 (1974), petitioner sought a ruling that respondent, a lower court judge, had improperly held petitioner in contempt for refusing to answer certain questions asked on deposition. Gilbert had sued for divorce and, at a deposition taken by his wife's attorney, had testified concerning certain certificates of deposit (CD's) in a Mexican bank. After judgment of divorce was entered, the wife learned of additional CD's and her attorney attempted to depose petitioner with regard thereto. Upon Gilbert's refusal to answer on the ground that it might incriminate him, he was held in contempt. The Arizona Court of Appeals held that

---

[2] Because plaintiff kept no records of the cash payments, and refused to divulge the recipients thereof or the purposes therefor, the defendant could not even investigate plaintiff's admissions.

the petitioner was an involuntary witness at the deposition who was entitled to assert the privilege at the point he did because the answers to such questions might incriminate him. *Id.,* 196.

On appeal to the Arizona Supreme Court, the appeals court's decision was reversed. *Gilbert v McGhee,* 111 Ariz 121, 124; 524 P2d 157 (1974). In particular, the court stated:

> "The voluntariness of petitioner's testimony is apparent. He, as plaintiff in the divorce action and as trustee of the community assets, must have been aware that he would be required to disclose the source and nature of the funds in his possession and control. His examination into this aspect of the marital relationship was inevitable. Having testified on the relevant issue of the amount and character of the community property, he could not refuse to disclose further details under a claim of compulsory incrimination.
>
> *   *   *
>
> "We hold that since petitioner brought the action and since it was inevitable that he would be required to testify to all relevant matters, he opened the door to cross-examination on those matters material to the complete determination of the action."

If the reasoning in *Gilbert, supra,* is applied here, we conclude that plaintiff waived his right to invoke the privilege when he sued for the money due on the loan. Plaintiff's complaint alleges that he had demanded payment of the outstanding debt but that defendant refused to tender payment. Defendant's answer admitted that it had refused payment, "for the reason that Plaintiff is indebted to Defendant for sums of monies far in excess of Plaintiff's claim as is evident from the counterclaim filed herein". Defendant's counterstatement of facts on appeal states that plaintiff

was discharged from his employment with defendant when defendant discovered plaintiff's actions, and that, at the time of discharge, $4,700 was outstanding on the loan.

The fair inference arising from these facts is that defendant's nonpayment of the balance due on the loan was inextricably related to plaintiff's use of the corporation's cash receipts. There is thus little reason to question plaintiff's knowledge that, when he sued for the balance due on the loan, defendant would counterclaim for the money plaintiff allegedly converted. Plaintiff's admission that he diverted $4,815 from the corporation's cash receipts thus represents nothing more than an attempt to equalize the situation while limiting any further liability to defendant.

Given plaintiff's certain knowledge that his suit for the balance due on the loan would elicit defendant's counterclaim for money plaintiff allegedly diverted from corporate income, we conclude that he was a voluntary witness. Any other holding would enable plaintiff to avoid being held fully accountable to defendant.

II

Plaintiff's second claim of error is that the trial court improperly entered default judgment and dismissed plaintiff's complaint because plaintiff refused to answer the questions asked at the second deposition.

GCR 1963, 313.2(2)(c) states that a trial court may dismiss an action or enter judgment of default if a party refuses to obey an order requiring him to answer designated questions. Where such action is taken, it will not be disturbed on appeal absent an abuse of discretion. *Philips Industries,*

*Inc v Smith,* 90 Mich App 237, 246; 282 NW2d 788 (1979), *Humphrey v Adams,* 69 Mich App 577, 581-582; 245 NW2d 167 (1976).

Plaintiff's refusal to answer the questions asked at the first deposition was grounded on the privilege against self-incrimination. After the trial court determined that plaintiff could not be incriminated by answering the questions, and that, in any event, he had waived the right to invoke the privilege, plaintiff was ordered to answer the defendant's questions. At the subsequent deposition, plaintiff again refused to answer the questions, not because of the privilege against self-incrimination, but because the area counsel sought to explore was "irrelevant". During the deposition, defense counsel had plaintiff read the court's order, but plaintiff still refused to answer the questions.[3]

---

[3] At the second deposition, the following dialogue was transcribed:

"Q What were those corporate expenditures?

"MR. BOYER [PLAINTIFF'S ATTORNEY]: I object and instruct my client not to answer on the basis that the question and answer would be irrelevant.

"MR. McGRAIL [DEFENDANT'S ATTORNEY]: If I were to go into the areas of questions previously not answered by the witness, would it be your instruction to him not to answer?

"MR. BOYER: Yes, with the objection that the question would be irrelevant.

"Q (Continuing by Mr. McGrail): Mr. Meyer, is it your intention not to answer any questions for which your attorney has instructed you not to answer?

"A Yes.

"Q Were we to go through question by question from the previous deposition as to the question I asked and where you asserted your fifth amendment privilege, I would receive no answer from you?

"A That's correct.

"MR. McGRAIL: Is it my understanding that the sole basis for the objection is irrelevancy?

"MR. BOYER: Yes.

"MR. McGRAIL: You are not asserting the fifth amendment privilege?

"MR. BOYER: No.

"MR. McGRAIL: It would serve no purpose for me to continue with the questioning.

A review of the deposition transcript indicates that plaintiff had no intention of answering the questions defendant sought to ask. Counsel's argument at the hearing to enter default indicated that plaintiff believed he had no obligation to do more once he had admitted the diversion of $4,815. This belief was in error. Plaintiff held the keys to defendant's case and was ordered to answer the questions asked by defendant. When he refused to do so, he forever prevented defendant from fully investigating its counterclaim. We therefore hold that the trial court did not abuse its discretion in entering default judgment against plaintiff on the counterclaim. Dismissal of plaintiff's complaint was likewise proper, given the interrelationship

"MR. BOYER: That's correct.

"Q (Continuing by Mr. McGrail) Had you previously seen a copy of this July 12th Order, Mr. Meyer?

"A No.

"MR. BOYER: Let me indicate that I reviewed the Order, as a matter of fact, I approved it as to form and I discussed it with Mr. Meyer and he is of the understanding that the Judge, with respect to the motion that was before him, did order him for answers.

"MR. McGRAIL: For the record, I would like an indication by the witness that he has at this time read this order and will not answer the questions as previously put. I would like him personally to read the order so you know the contents of what the Judge signed.

"MR. BOYER: I don't think that is necessary.

"MR. McGRAIL: You are instructing your client not to read the order?

"Q (Continuing by Mr. McGrail) So, if I showed you this order, you would not read it?

"A On advice of my attorney, no.

"MR. BOYER: After reconsideration, go ahead and read it.

"Q (Continuing by Mr. McGrail) Please read the Order that I show you that purports to be an Order of July 12th, sir.

(Whereupon there was a short pause in the proceedings)

"Q (Continuing by Mr. McGrail) Is there anything vague about the order that you can see?

"A Nothing vague.

"Q And you are not answering the questions after having read that order?

"A That is correct.

"MR. McGRAIL: I have nothing further in view of the position the witness and the attorney have taken at this time."

between plaintiff's claim and defendant's counter-claim.

## III

Plaintiff finally asserts error in the trial court's refusal to allow plaintiff or his attorney to participate in the damages hearing with regard to the default judgment.

GCR 1963, 520.2(2) provides in pertinent part as follows with regard to such hearings:

"If the party against whom judgment by default is sought has appeared in the action, he (or if appearing by representative, his representative) shall be served with written notice of the application for judgment at least 7 days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by the constitution."

2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), 659, states that:

"The default, moreover, in a suit for unliquidated damages, does not establish the amount of damages, and the taking of proofs or a trial on this issue becomes necessary. A defaulted defendant may not be heard on the trial of damages as a matter of right. Nor will he have any right to trial by jury. Either he will have waived that right by failure to make a timely demand, Rule 508, or he will have forfeited his right to a contested trial by the acts constituting his default. The plaintiff, on the other hand, may have made a timely

demand for trial by jury, Rule 508, and if it becomes necessary to take proofs on the issue of damages he could insist upon trial by the jury rather than by the court as a matter of Constitutional right."

Notwithstanding Honigman & Hawkins' statement, the Michigan courts have not yet considered whether the defaulted defendant has the right to participate in the damages hearing.[4]

In our analysis of plaintiff's argument herein, we begin with the recognition that a default admits the right to recover but not the amount of damages. *Haller v Walczak,* 347 Mich 292, 300; 79 NW2d 622 (1956). Thus, the court must still assess damages and, ideally, such assessment should award the successful party only what is due, and no more. It is axiomatic that the best way to achieve this result is by permitting the defaulted party to participate in the damages hearing. The provision in GCR 1963, 520.2(2) for notice to the defaulted party would seem directed at securing such participation.

If notice was only intended to insure an observer's presence, rather than that of a participant, each damages hearing would result in an appeal because that would be the only means by which a defaulted party could voice his objections to the proceedings. As we are not sufficiently persuaded that the administration of justice requires such a procedure, we will not endorse it now. In this conclusion, we are supported by numerous cases from other jurisdictions. See, *Ferri v Braun,* 236 Ark 329, 331; 366 SW2d 286 (1963) ("[Defendant] had the right to cross-examine witnesses giving testimony as to damages and he had the right to

---

[4] In *Waisanen v Gaspardo,* 30 Mich App 292, 293-294; 186 NW2d 75 (1971), the Court quoted the above statements from Honigman & Hawkins, but only in relation to plaintiff's right to a jury trial on the question of damages.

introduce testimony in mitigation of damages."), *Clark v Collins*, 213 Ark 386, 390; 210 SW2d 505 (1948) ("[T]he trial court erred in denying appellant the right to cross-examine the witnesses for appellee and to introduce evidence for the purpose of minimizing the damages."), *Carson v Perkins*, 217 Ind 543, 553; 29 NE2d 772 (1940) ("[O]ne who is defaulted may thereafter appear and contest the amount of damages."), *Lindsey v Keenan, Andrews & Allred*, 118 Mont 312, 321; 165 P2d 804; 163 ALR 487 (1946) ("[I]t is generally held that at any hearing for the determination of damages the defendant has the right to appear and be heard on that question, and to cross-examine and offer proof in mitigation of damages."), and *Wileman v Town of Tullahoma*, 29 Tenn App 172, 176; 195 SW2d 325 (1946) ("A default judgment only admits that plaintiff has stated a cause of action in the pleadings. Thereafter, evidence which questions the right of action is inadmissible. Defendant may introduce evidence, however, on the question of damages, although a default judgment has been entered against it on the question of liability.").

In the instant case, plaintiff and his attorney were denied the right to participate in any way at the damages hearing. This was error. Accordingly, we reverse the order assessing damages and remand for a new hearing at which plaintiff shall be permitted to cross-examine defendant's witnesses, present his proofs, and argue the issue to the finder of fact. Plaintiff shall not be permitted to introduce proofs in derogation of his liability, and damages in the amount of $4,815 stand as admitted. If defendant is able to establish further damages, such shall be awarded.

Affirmed in part; reversed in part and remanded for proceedings consistent with this opinion. We retain no further jurisdiction.