*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LAURA FRIZZO,

      Plaintiff-Appellant,

v

CITY OF IRON RIVER and DAVID THAYER,

      Defendants-Appellees.

UNPUBLISHED
February 18, 2021

No. 347361
Iron Circuit Court
LC No. 17-005475-CZ

Before: BECKERING, P.J., and SAWYER and SHAPIRO, JJ.

PER CURIAM.

Plaintiff, former Iron River Chief of Police Laura Frizzo, filed a wrongful discharge claim under the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq.* against defendants, the city of Iron River ("the city") and David Thayer, the Iron River city manager. After a ten-day trial, a jury entered a verdict in favor of defendants, and the trial court entered a judgment of no cause of action on the verdict. Plaintiff appeals as of right from the judgment, challenging several of the trial court's evidentiary rulings. Because we conclude that the trial court's rulings were not an abuse of discretion, we affirm.[1]

## I. PERTINENT FACTS

Resolution of the issues presented does not require a detailed recitation of the testimony elicited at the 10-day trial. Nevertheless, some background information is necessary to provide context for the issues plaintiff raises. Plaintiff began working for the city of Iron River as a patrol officer in 1995. In December 2013, she became Chief of Police, a salaried, at-will position that serves at the pleasure of the city manager. Defendant Thayer became the Iron River city manager

---

[1] The trial court granted summary disposition of plaintiff's claim under the Whistleblowers' Protection Act, MCL 15.361 *et seq.*, and that portion of her claim under the ELCRA that alleged a hostile work environment. The parties stipulated to dismiss plaintiff's claim under the Open Meetings Act, MCL 15.261 *et seq.* The dismissal of these claims is not at issue in this appeal.

in October 2015 and terminated plaintiff's employment in December 2016. Plaintiff filed this wrongful discharge claim against defendants three months later.

Plaintiff's theory at trial was that Thayer terminated her employment because of her gender. In support, she presented evidence of several specific incidents that occurred between the two of them. Among them, she testified that in April 2016, she and Thayer were on a telephone conversation when she raised an issue that they had previously discussed and she pointed out that Thayer had not gotten back to her about it. According to plaintiff, Thayer said in a loud voice "you bitch" and hung up the phone. She also testified that in July 2016, she was sitting in Thayer's office talking about some difficult personal issues when she became teary, which prompted her to apologize for her display of emotion. According to plaintiff, Thayer responded, "Oh it's a female thing," and then said, "[t]hat's why women don't belong in men's occupations."

Defendants' theory at trial was that Thayer did not terminate plaintiff's employment because of her gender, but rather, because of her temperament, management style, and unprofessional behavior toward him, other city employees, and the public. As for the April 2016 phone conversation, Thayer admitted to saying out loud "*that* bitch" at the end of the phone call, but he claimed he did not say it directly to plaintiff. According to Thayer, plaintiff had called him on the phone, screamed about something they had previously discussed and would not let him get a word in edgewise, and then she slammed down the phone. Thayer said he made the comment as he was putting down the phone.[2] He testified that his use of the word "bitch" was an involuntary reaction to plaintiff's insubordination, rather than an expression of some deeply held inner thoughts about her. As to the July 2016 incident in his office, Thayer testified that he recalled the conversation and he denied saying what plaintiff claims he did.

The parties also presented evidence regarding an incident that occurred on September 19, 2016, when two elderly people, Darlene Lang and her cousin, Jim Dellies, came to the police department seeking information about obtaining a death certificate for Lang's deceased husband for insurance purposes.[3] Dellies testified[4] that, as he was trying to explain to plaintiff what he needed and why he had come to the police department, plaintiff started yelling and swearing at him and told him to "get the f**k out of my office." Plaintiff swore at him at least twice more and threatened to have him jailed if he did not leave her office. Lang testified[5] that plaintiff "hollered" at Dellies, used profanity, and told him to leave, and that as she was leaving the department, Lang heard plaintiff call her an "old gray-haired bitch." City clerk Rachel Andreski and city treasurer Amanda Tukesbrey testified that they later spoke with Dellies and Lang, that Lang was upset and crying, and that Dellies explained he and Lang were attempting to obtain a death certificate when

---

[2] There was testimony from others in the office who overheard Thayer's proclamation when hanging up the phone. Thayer believed that plaintiff later heard about the remark from one of them.

[3] A surveillance video that captured the incident, without audio, was played several times for the jury.

[4] The parties stipulated to have Dellies' deposition read at trial.

[5] The parties stipulated to read Lang's sworn statement at trial.

plaintiff began yelling at them. Dellies and Lang met with Thayer immediately after the incident to report plaintiff's actions.

In contravention, plaintiff insisted that she handled the situation appropriately. She said she asked Dellies to leave her office only after he swore and screamed at her. Plaintiff called two witnesses who testified that they did not hear her swear at Dellies. During the trial, plaintiff called a number of witnesses who testified that she always behaved professionally, respectfully, and appropriately toward others.

On September 20, 2016, plaintiff and Thayer met to discuss the Lang/Dellies incident. Both parties had differing accounts as what happened at their meeting, but both testified that the discussion became tense and ended when plaintiff walked out of Thayer's office. Plaintiff testified that after she left Thayer's office, she felt exhausted; she was having medical and mental health issues, and she needed to get away for a few days.

On September 23, 2016, plaintiff sent Thayer an e-mail indicating, among other things, that she intended to return to work on Wednesday, September 28, 2016. Thayer responded to plaintiff's e-mail the same day, indicating that he expected her to return to work on Monday, September 26, unless she presented a physician's statement indicating that she was unable to return to work. According to Thayer, city policy required a medical slip for absences lasting longer than three days. Thayer told plaintiff in the e-mail that a failure to return to work or provide a medical slip would be interpreted as a voluntary resignation. On Monday, September 26, Thayer read an e-mail sent two days earlier from plaintiff's primary care physician and friend, Dr. Danny Yarger. In the email, Dr. Yarger explained that plaintiff was under his care and was medically restricted from work until released. He estimated that plaintiff required a two-week absence, after which he would reevaluate her.

On Wednesday, September 28, 2016, plaintiff sent an e-mail to Thayer and other city employees, including the mayor, informing them she would return to work on Tuesday, October 14, 2016, and that her "work hours will be 8:30 a.m. to 4:30 p.m., Monday-Friday. I will no longer be working more than an eight-hour workday." Mayor Terry Tarsi sent an e-mail to Thayer stating that a police chief "would not have a job under the dictation in that e-mail" and that a "chief of police should be available to the city 24/7" unless the chief was on vacation.[6] Thayer responded to plaintiff's e-mail the same day, stating his expectations and indicating the requirements needing to be met before plaintiff could return to work. Thayer required plaintiff to provide a release from her physician that allowed her to return to work, certified her fitness for duty, and identified any limitations on her turn to work. He also reserved an opportunity to review the release and determine if further examination was necessary to certify plaintiff's fitness for duty, and he required plaintiff to acknowledge Thayer's expectations regarding her work performance. Further, Thayer told plaintiff to see him first "prior to performing any form of work activities."

---

[6] Plaintiff elsewhere presented testimony that, even though Thayer would not accommodate the 40-hour-workweek limitation called for by her physician, her male replacement as Iron City Chief of Police was allowed to work 40-hour weeks during the first three months of his employment.

Thayer met with plaintiff and her attorney on October 4, 2016. Plaintiff provided an unsigned note from Dr. Yarger dated September 29, 2016, indicating she was "medically able to return to work," and suggesting that she limit her work activity to 40 hours per week for the next three months, after which time the issue could be "revisited." Thayer advised plaintiff that he wanted her to undergo a fitness-for-duty evaluation, and scheduled an evaluation with Craig Childs, a licensed psychologist and public safety consultant who specialized in evaluations of law enforcement officers.

Dr. Childs evaluated plaintiff on November 2, 2016. He testified at trial that plaintiff became upset and angry during the evaluation and that plaintiff's defensive presentation was consistent with what Thayer had conveyed to him about his interactions with plaintiff. After testifying to his interpretation of the results of the tests he administered in his evaluation of plaintiff, Dr. Childs noted that plaintiff and Thayer were not working effectively together and that plaintiff's "natural personality tendencies appear to conflict with what her supervisor would like to see from her." He concluded that plaintiff was fit for duty.

Defendants presented testimony establishing that Thayer received a number of reports and complaints about plaintiff's behavior from both city employees and members of the public informing him about her brusque and abusive behavior. Thayer also testified that he reviewed the personnel files for each department head when he became city manager. He had experienced plaintiff's insubordination himself, and concluded on the basis of Dr. Childs' report that plaintiff's conduct would not change and he was not going to have a successful relationship with her going forward.

After deliberating for approximately 10 hours over the course of two days, five members of the seven-member jury concluded that gender was not a motivating factor in Thayer's decision to terminate plaintiff's employment.[7] The trial court entered a corresponding no cause of action judgment in favor of the defendants based on the jury's verdict.

## II. ANALYSIS

On appeal, plaintiff challenges three of the trial court's evidentiary rulings. This Court generally reviews for an abuse of discretion a trial court's decision to admit or exclude evidence. *Barnett v Hidalgo*, 478 Mich 151, 158-159; 732 NW2d 472 (2007). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 604; 886 NW2d 135 (2016). "However, when the trial court's decision to admit evidence involves a preliminary question of law, the issue is reviewed de novo, and admitting evidence that is inadmissible as a matter of law constitutes an abuse of discretion." *Id*. at 159. "Evidentiary errors are not a basis for vacating, modifying, or otherwise disturbing a judgment unless declining to take such action would be inconsistent with substantial justice." *Miller v Hensley*, 244 Mich App 528, 531; 624 NW2d 582 (2001); MCR 2.613(A).

---

[7] The parties stipulated to accepting a verdict agreed to by five of the seven jurors.

# 1. THAYER'S OTHER ACTS

Plaintiff first contends the trial court erred by granting defendants' motion in limine to exclude testimony from several witnesses who had previously worked with Thayer and were prepared to testify regarding his attitude toward, and treatment of, women. Plaintiff argues that the testimony was admissible under MRE 404(b) to establish the central issue of motive or intent. Under the presenting circumstances, we disagree.

"All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, the [court] rules, or other rules adopted by the Supreme Court. Evidence which is not relevant is not admissible." MRE 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403.

At issue is whether plaintiff's proposed evidence was admissible under MRE 404(b)(1), which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Other-acts evidence is admissible if it is relevant and offered for a proper purpose, and if the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). A proper purpose is one that requires the fact-finder to make an intermediate inference other than one about a defendant's character or criminal propensity. *Id*. at 87. In addition, the proposed evidence must be evidence of acts, not mere allegations of acts. *Id*. at 61-62.

Plaintiff alleged in her complaint that Thayer engaged in "multiple incidents of harassment and prejudicial behavior toward female employees" in positions he held in other cities between 1995 and 2010. Apparently anticipating that plaintiff would call witnesses to testify at trial regarding their experiences working with Thayer during this period, defendants moved in limine to preclude any evidence or argument at trial of Thayer's purported propensity for discrimination against women. Defendants argued that plaintiff's proposed evidence of Thayer's past, allegedly discriminatory conduct, was inadmissible under MRE 402 and 404(a) because it was irrelevant to prove discrimination against the present plaintiff and it constituted impermissible character evidence. Defendants further argued that evidence of other acts to demonstrate Thayer had a propensity to engage in discriminatory conduct in general and to establish that he engaged in discriminatory conduct by terminating plaintiff in this case was not admissible under MRE 404(b).

Lastly, defendants argued that, even if the proposed testimony was relevant, its probative value was significantly outweighed by the danger of unfair prejudice, confusion of the issues, and danger of misleading the jury, and thus was barred by MRE 403.

Plaintiff responded that evidence of Thayer's prior incidents demonstrated his discriminatory motive and intent and, therefore, was admissible under MRE 404(b) because the central issue in the case was Thayer's motive and intent in terminating plaintiff's employment. Plaintiff also argued that, because Thayer's prior discriminatory conduct was strongly probative of motive and intent in this case, the probative value of the evidence was not outweighed by the danger of unfair prejudice under MRE 403.

At the hearing on the motion, plaintiff's counsel made an offer of proof conveying in general terms the anticipated testimony of plaintiff's proposed witnesses. Counsel admitted that it was difficult to identify exactly what the proposed witnesses would testify about at trial because they had not yet been deposed, such that a ruling at that point might be premature, but maintained that the witnesses would testify about "multiple incidents" of aggressive, hostile, and harassing conduct. The trial court ruled as follows:

> I am going to rule that based upon what I know now, the age of these prior incidents with former employees and the lack of specificity as to what he did in terms of showing female animus, discriminatory intent, that I think that the proposed testimony is too vague, too general, and basically is they had a bad relationship with Mr. Thayer. I don't see any indication that this was a discriminatory intent situation. The people happened to be female, but, . . . he had bad relationships with men as well.

Thus, the trial court granted defendant's motion on the basis of the age and lack of specificity of the proposed evidence. In addition, however, the court signaled its willingness to revisit the issue if plaintiff wanted to present additional information, such as in the form of deposition testimony. Plaintiff did not come forward with any additional evidence regarding the proposed testimony either before or during trial, and she did not attempt to call the witnesses to testify.[8]

We conclude that the trial court did not abuse its discretion by granting defendant's motion in limine and excluding plaintiff's proposed evidence under MRE 404(b). Plaintiff's offer of proof consisted of plaintiff's counsel's beliefs as to the general nature of the witnesses' testimony. Plaintiff's counsel said that one of two proposed female witnesses identified "multiple incidents" in which Thayer was aggressive and hostile toward her and that she believed her gender was the reason for his behavior, and that the other would testify she was "treated differently than similarly situated males" and experienced "multiple instances of harassment." However, counsel did not identify any facts—any specific other acts—that supported the witnesses' allegations. Plaintiff's counsel also said that two male witnesses "have identified issues related to Mr. Thayer and his

---

[8] Plaintiff argues that Thayer "opened the door" to testimony regarding his treatment of women in the past and at other places of employment when he testified that he "never had a problem" with women in his career. However, plaintiff did not object to this testimony nor ask the trial court to reverse its pre-trial ruling in light of Thayer's testimony.

treatment of females," but, once again, did not identify the facts underlying those "issues." The lack of specificity in plaintiff's offer of proof made it impossible for the trial court to determine what intermediate inference the evidence was intended to elicit, other than an inference about Thayer's character or propensity to discriminate on the basis of sex. *VanderVliet*, 444 Mich at 87. This lack of specificity also rendered it impossible for the trial court to determine that the probative value of the evidence was not substantially outweighed by unfair prejudice. See *id*. at 55.

At the time of defendants' motion, plaintiff's offer of proof was not sufficiently specific to allow the trial court to determine whether it would lead to an intermediate inference, other than about Thayer's character or propensity to discriminate, or to balance the probative value of the evidence with its potential for unfair prejudice, as required by MRE 403. Yet the trial court indicated it was willing to revisit the issue if and when plaintiff could make a better showing. We cannot conclude, given these circumstances, that the trial court's decision to grant defendants' motion in limine was outside the range of reasonable and principled outcomes.

## 2. PLAINTIFF'S OTHER ACTS

Plaintiff next contends that the trial court erred by denying her motion in limine to exclude certain of her own other acts under MRE 404(b). The trial court denied plaintiff's motion, concluding that the prior incidents that occurred during her employment were admissible to demonstrate the reasonableness of Thayer's decision to terminate her employment. Again, we find no abuse of discretion in the trial court's evidentiary ruling.

To establish a prima facie case of sex discrimination case, an employee must show that: (1) he or she was a member of a protected class; (2) he or she suffered an adverse employment action; (3) he or she was qualified for the position; and (4) others, similarly situated and outside of the protected class, were unaffected by the defendant's adverse conduct. *Town v Mich Bell Tel Co*, 455 Mich 688, 695; 568 NW2d 64 (1997). If the plaintiff is able to establish a prima facie case of discrimination, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Major v Village of Newberry*, 316 Mich App 527, 541; 892 NW2d 402 (2016).

Plaintiff moved to exclude certain instances of her prior conduct that she deemed unrelated to Thayer's reasons for terminating her. She itemized the specific evidence Thayer said he relied on to terminate her, such as verbal communications provided to him by others and general observations of her performance. She then argued that conduct unrelated to the itemized evidence should be excluded. She also identified individuals with whom she had "personal issues," "domestic issues," and "alleged assaults," and argued for the exclusion of evidence related to her interactions with those individuals. Plaintiff asserted that evidence of conduct Thayer did not rely on to terminate her and evidence of her interactions with the named individuals was irrelevant, unfairly prejudicial, and constituted impermissible character evidence. Defendants argued they were not offering evidence of plaintiff's prior conduct as propensity or character evidence, but to prove the reasonableness of Thayer's termination decision.

The trial court ruled that evidence of domestic issues and assaults was not admissible under MRE 403 and 404. However, the court found that evidence of plaintiff's conduct that Thayer knew about when he made his termination decision—such as the contents of plaintiff's personnel

file and specific exchanges with coworkers and citizens—was relevant. Regardless of whether Thayer listed particular instances of plaintiff's brusque and abrasive conduct as deciding factors in his decision, the court said he knew about them and they plausibly factored into the reasons for terminating her employment, which was "her bad temper, her alleged inability to get along with others, co-workers, and explosive nature." The court further reasoned that evidence of plaintiff's prior conduct would likely come in as evidence of whether Thayer exercised "reasonable business judgment in terminating her."

Plaintiff argues on appeal that the trial court erred, not by admitting evidence plaintiff had identified as irrelevant and unfairly prejudicial, but by admitting *other* evidence of "multiple incidents that occurred during the eighteen years [plaintiff] was employed by the Iron River Police Department in which she treated people brusquely or used an obscenity." Plaintiff contends that this evidence was inadmissible under MRE 404(b)'s limitation on character evidence. However, except for Steven Davis's testimony, which we will treat separately, plaintiff does not identify the witnesses' testimony she contends was improperly admitted.

It is undisputed that defendants did not attempt to admit any testimony concerning disputes with individuals that plaintiff had stated were irrelevant with respect to her claim. Further, the evidence that was admitted—evidence of Thayer's communications with, and general observations of, plaintiff and of plaintiff's conduct toward her coworkers and the general public— was evidence plaintiff acknowledged in the trial court was relevant and admissible because it was known and considered by Thayer when making his decision to terminate her employment. Plaintiff's claim on appeal that this evidence should not have been admitted under MRE 404(b) is contrary to her position in the trial court. A party may not harbor error as an appellate parachute by deeming an issue as proper in the trial court, but raising it as error on appeal. *Auto-Owners Ins Co v Compass Healthcare PLC*, 326 Mich App 595, 613; 928 NW2d 726 (2018).

In addition, plaintiff's argument that the evidence admitted at trial was inadmissible character evidence under MRE 404(b) is misplaced. Evidence of plaintiff's temperament and behavior was not admitted as propensity evidence under MRE 404(b) to show that she acted in conformity with that behavior during the Dellies/Lang incident. Rather, defendants sought to admit the evidence to show what informed Thayer's decision to terminate plaintiff's employment and to show the reasonableness of that decision. Under these circumstances, the trial court's decision to admit evidence of plaintiff's conduct that Thayer knew about at the time of his decision to terminate her employment did not fall outside the range of principled outcomes and did not constitute an abuse of discretion.

Plaintiff argues that the trial court erred by admitting the testimony of Steven Davis, who testified about an incident in which plaintiff told him at the scene of an accident to "shut the f**k up" after he had told Dr. Yarger not to destroy evidence by kicking debris in the road. Plaintiff had objected to the testimony on the grounds that Thayer was unaware of the incident. The trial court found the evidence relevant because "the professionalism of the [p]laintiff has been made a point. We have heard a great deal of testimony about that, and I think that is definitely in play here."

Assuming the trial court erred by admitting the testimony because Thayer had not been aware of the incident, such error does not merit reversal under the standard set forth in MCR

2.613(A). Davis's testimony was essentially cumulative of other properly admitted evidence about which Thayer was aware. For example, plaintiff's secretary, Wendy Otto-Shimun, testified that plaintiff "went off on her" in text messages; city clerk Rachel Andreski testified that plaintiff "blew up" at her in June 2015, and that plaintiff told her to "go f**k yourself" before slamming down the phone in July 2015; Susie Johnson in accounting and Lloyd Jacobson in IT refused to work with plaintiff; and city treasurer Tukesbrey testified that plaintiff told her to "just pay the f**king invoice." Additionally, in rebuttal, plaintiff called Dr. Yarger, who testified that and he did not recall anyone yelling at him about destroying evidence at the scene of the accident. Under the circumstances, any error in the admission or use of Davis's testimony was not inconsistent with substantial justice. MCR 2.613(A).

### 3. MCL 421.11A

Lastly, plaintiff argues that the trial court abused its discretion when it granted defendants' motion in limine to exclude testimony that Thayer had previously given at plaintiff's unemployment benefits hearing on the ground that such testimony fell under the confidentiality provision of MCL 421.11(b)(1). We conclude that the trial court did not err.

The Michigan Employment Security Act (MESA), MCL 421.1 *et seq*., prohibits the use of information and determinations elicited during an unemployment proceeding before the Michigan Unemployment Insurance Agency (MUIA) in a subsequent civil proceeding unless the MUIA is a party to or complainant in the action. MCL 421.11(b)(1)(*iii*); *Storey v Meijer, Inc*, 431 Mich 368, 376; 429 NW2d 169 (1988). However, MCL 421.11a provides an exception to this rule, and states that "[a]n individual who testifies voluntarily before another body concerning representations the individual made to the unemployment agency pursuant to the administration of this act waives any privilege under [MCL 421.11] otherwise applying to the individual's representations to the unemployment agency."

Plaintiff appears to argue that the exception in MCL 421.11a applies because Thayer testified voluntarily at his deposition in this case about the same topic he had testified about at plaintiff's unemployment benefits hearing: the grounds for plaintiff's termination. She contends that Thayer effectively waived the confidentiality provisions of MCL 421.11(b)(1) when he testified voluntarily and did not assert a privilege regarding the unemployment hearing testimony, MCR 2.306(D). Plaintiff recognizes that there is no caselaw interpreting the term "voluntarily" as used in MCL 421.11a, but that this Court's decision in *Bodnar v St John Providence, Inc*, 327 Mich App 203; 933 NW2d 363 (2019), supports the conclusion that the trial court erred by precluding admission of the testimony Thayer gave at the unemployment hearing.

In *Bodnar*, former employees brought an action against their former employer, St. John Providence Hospital, and its parent company after their employer terminated their positions following a staff reduction policy. *Bodnar*, 327 Mich App at 209-210. The trial court denied the employer's motion to strike certain evidence pertaining to proceedings before the MUIA. *Id*. at 211. This Court upheld the trial court's decision, finding that an affidavit submitted by the employer's human resources manager in support of the defendant's motion for summary disposition concerned the same representations made to the MUIA in the hearing transcript and, therefore, the privilege protecting information presented during the MUIA proceeding was waived under MCL 421.11a. *Id*. at 232-233.

Plaintiff likens Thayer's testimony at his deposition in this case to the affidavit submitted in *Bodnar*. However, *Bodnar* is distinguishable on this point. Whereas the *Bodnar* parties did not dispute that the human resources manager submitted her affidavit voluntarily, the present defendants contend that Thayer's deposition testimony was not voluntary. Neither party provides authority addressing the voluntariness of deposition testimony in the context of MCL 421.11a, nor have we found any. However, defendants point to *Meyer v Walker Land Reclamation, Inc*, 103 Mich App 526; 302 NW2d 906 (1981), a case in which a corporation's former shareholder brought an action against the corporation to recover amounts allegedly due on his sale of stock to the corporation. The corporation counterclaimed for a sum of money allegedly converted by the plaintiff while employed as manager of the corporation. This Court addressed whether the plaintiff waived the right to invoke the privilege against self-incrimination because he freely testified that he had diverted money from the corporation. *Id*. at 532. The Court said that the question of waiver turned first upon whether the witness was voluntary or involuntary. In this context, the Court opined:

> The question whether a party is a voluntary or involuntary witness at a deposition has not been decided in Michigan. In *Phelps Dodge Corp v Superior Court of Cochise County*, 7 Ariz App 277; 438 P2d 424 (1968), however, the Arizona Court of Appeals considered the issue and ruled as follows:
>
>> We do not believe Lederman can be classified as a "voluntary witness." His deposition indicates it was taken "pursuant to notice." A litigant in a civil action is subject to having his deposition taken in accordance with Rule 26, Rules of Civil Procedure, and he is subject to sanctions if he fails to appear at the designated time for this purpose.
>
> A similar conclusion may be made here. GCR 1963, 305.1 states that:
>
>> Service on a party, or his attorney, of notice of the taking of the deposition of a party . . . is sufficient to require the appearance of the deponent and a subpoena need not be issued.
>
> GCR 1963, 313.4 states that, on failure of the party to appear after being served with proper notice, the court on motion, inter alia, may strike certain pleadings, dismiss the action, or enter a judgment of default. Thus, if we apply the Phelps Dodge rationale, plaintiff was an involuntary witness. [*Id*. at 533-534 (citations omitted).]

The *Meyer* Court noted that, in *Phelps Dodge*, the party deposed was a defendant, and there was no indication that he had filed any sort of counterclaim that would cause him to be a voluntary witness to the claim. *Id*. at 534.

Thayer is a defendant in this action, and he was deposed by plaintiff pursuant to notice. Failure to attend the deposition could have resulted in court-ordered sanctions against him. See MCR 2.313. Applying the reasoning in *Meyer*, Thayer's deposition testimony was not voluntary. Thus, the exception in MCL 421.11a does not apply to render admissible at trial Thayer's testimony at the unemployment hearing.

Even if Thayer's testimony at the deposition in this case had been voluntary, plaintiff does not point to any testimony "concerning representations the individual made to the unemployment agency." MCL 421.11a. In *Bodnar*, the human resources manager testified at the hospital employees' unemployment hearing regarding the historical meaning of "comparable job." *Bodnar*, 327 Mich App at 233. She provided the same definition of "comparable job" in the affidavit she submitted before the trial court in support of the defendant's motion for summary disposition. *Id*. This Court concluded that, because the affidavit "concerned the same representations [the human resources manager] made before the MUIA . . . the privilege protecting information presented during a MUIA proceeding was waived under MCL 421.11a, and the trial court properly admitted the MUIA hearing transcript." *Id*. The present plaintiff contends that Thayer testified at his deposition about the same *topic* he testified about at plaintiff's unemployment benefits hearing, but she does not identify any specific testimony at the deposition "concerning representations [Thayer] made to the unemployment agency." MCL 421.11a. Accordingly, the trial court did not abuse its discretion by holding that Thayer's statements made during the unemployment hearing were privileged and inadmissible at trial.

Affirmed.


/s/ Jane M. Beckering
/s/ David H. Sawyer